*1077
 
 OPINION
 

 Per Curiam:
 

 Billy Villescas (“decedent”) purchased a policy of long term disability insurance through his employer, Marshall Industries. Respondent CNA Insurance Companies (“CNA”) issued the policy to decedent’s employer, Marshall Industries. Appellant, Amelia Villescas (“Villescas”), in her capacity as administratrix of decedent’s estate, brought suit against CNA alleging breach of the covenant of good faith and fair dealing, breach of fiduciary duties, common law fraud, and breach of NRS 686A.310 because CNA allegedly failed to pay all the benefits owed to decedent under the policy.
 

 CNA filed an answer which generally denied Villescas’ allegations. CNA then filed a motion for summary judgment on October 9, 1986, which Judge Mendoza denied. On December 8, 1987, CNA filed a renewed motion for summary judgment, which Judge Mendoza again denied. Prior to CNA’s filing its third motion for summary judgment, Judge Sobel replaced Judge Mendoza following a judicial election. CNA again renewed its motion for summary judgment on January 15, 1992, and Judge
 
 *1078
 
 Sobel granted the motion, finding that the Employment Retirement Income Security Act (“ERISA”)
 
 [1]
 
 preempted Villescas’ suit. We agree that this matter is preempted by ERISA.
 

 Summary judgment is proper where “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” NRCP 56(c). On appeal from summary judgment, all evidence favorable to the party against whom summary judgment was entered will be accepted as true. Jackson v. State Farm Fire & Casualty, 108 Nev. 504, 835 P.2d 786 (1992); Walker v. American Bankers Ins., 108 Nev. 533, 836 P.2d 59 (1992).
 

 Judge Sobel granted CNA’s motion for summary judgment because he found that there was “simply no evidence adduced to combat the evidence of Defendant [CNA] that the insurance here involved was part of an ERISA plan.” The crucial issue then is whether Villescas came forward with any evidence which, if taken as true, would raise a genuine issue of material fact as to whether decedent’s plan was covered by ERISA. Villescas also raised another, less-significant issue which we will discuss first: whether decedent was a “participant” as that term is used in ERISA.
 

 ERISA only applies to persons who are participants or beneficiaries under an ERISA plan. 29 U.S.C. § 1132(a)(1)(B) (1988); Turnbow v. Pacific Mut. Life Ins., 104 Nev. 676, 679, 765 P.2d 1160, 1162 (1988),
 
 cert. denied,
 
 490 U.S. 1102 (1989) (“if [appellant] is not a ‘participant’ or ‘beneficiary,’ [she] may sue under and seek the broader relief provided by state tort law”). A participant is defined as:
 

 [a]ny employee or former employee of an employer, or any member or former member of an employee organization who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
 

 29 U.S.C. § 1002(7) (1988).
 

 Villescas asserts that since decedent “was not employed by
 
 *1079
 
 Marshall Industries and had no prospects of returning,” he does not fit the above definition. This contention is inapposite because ERISA applies also to former employees as long as they are “eligible to receive a benefit.”
 
 Id.
 
 In addition, Villescas asserts that decedent paid premiums after he left Marshall Industries and that this fact also precludes a finding that decedent was a “participant.” This contention is really a repeat of the major issue presented in this case, whether the plan in question falls within the purview of ERISA. If decedent merely purchased a separate policy from CNA, then the policy is not an ERISA plan.
 

 Villescas relies upon this court’s opinion in
 
 Turnbow,
 
 which held that plaintiff’s claim was not preempted by ERISA because she was not an employee “participant” or “beneficiary” under an ERISA plan. We note, however, that the plaintiff in
 
 Turnbow
 
 was the sole owner and employee of an unincorporated business, and therefore, this court held that she could not be an employee under an ERISA plan.
 
 Id.
 
 at 679, 765 P.2d at 1162. In the instant case, decedent was not self-employed; therefore,
 
 Turnbow
 
 is of no help to Villescas on this issue.
 

 Villescas also argues that decedent was not a “participant” because “the term ‘participant’ encompasses only those former employees who are owed vested benefits.” Yancy v. American Petrofina, Inc., 768 F.2d 707, 709 (5th Cir. 1985), or who have a “reasonable expectation of returning to covered employment.” Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir. 1986),
 
 cert. denied,
 
 479 U.S. 916 (1986). It is certainly true that decedent will not return to covered employment. But the second prong of Villescas’ argument is circular: Villescas argues that she seeks not “vested benefits,” but rather, damages under state tort law, and therefore decedent is not a participant as that term is defined by
 
 Yancy
 
 and
 
 Kuntz.
 
 But the real issue here is whether those state causes of action are preempted by ERISA. Accordingly, we conclude that this argument lacks merit.
 

 Furthermore, both
 
 Yancy
 
 and
 
 Kuntz
 
 are standing cases, and it seems rather odd for Villescas to assert that she has no standing to sue under ERISA. More importantly,
 
 Kuntz
 
 and
 
 Yancy
 
 both involved plaintiffs who had received all of their benefits upon retirement in a lump sum, thus they were not “ ‘eligible to receive a benefit,’ and were not likely to become eligible to receive a benefit, at the time that they filed suit.”
 
 Kuntz,
 
 785 F.2d at 1411 (quoting 29 U.S.C. § 1002(7) (1988));
 
 see also Yancy,
 
 768 F.2d at 708-09. For these reasons, we conclude that Villescas’ assertion that decedent was not a “participant,” as that term is defined by ERISA, is not well-taken.
 

 “ERISA comprehensively regulates, among other things, employee welfare benefit plans that, ‘through the purchase of insurance or otherwise,’ provide medical, surgical, or hospital
 
 *1080
 
 care, or benefits in the event of sickness, accident, disability, or death.” Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1986) (quoting 29 U.S.C. § 1002(1) (1988)). ERISA states that except as provided in the so-called “savings clause” (discussed below), ERISA “shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.” 29 U.S.C. § 1144(a);
 
 Pilot Life,
 
 481 U.S. at 44-45. In place of these state law causes of action ERISA provides “appropriate remedies, sanctions, and ready access to the Federal courts.” 29 U.S.C. § 1001(b);
 
 Pilot Life,
 
 481 U.S. at 44.
 

 Villescas properly points out that “the existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person.” Ellington v. Metropolitan Life Ins. Co., 696 F.Supp. 1237, 1240 (S.D.Ind. 1988));
 
 see also
 
 Credit Managers Ass’n v. Kennesaw Life & Acc. Ins., 809 F.2d 617, 625 (9th Cir. 1987)).
 

 Villescas cites various regulations of the Department of Labor which describe those plans which are
 
 not
 
 covered by ERISA,
 
 [2]
 
 but offers no evidence to show the existence of a genuine issue of fact as to
 
 this
 
 plan. On the contrary, there is ample evidence in the record that Marshall Industries enrolled its employees in the plan, performed payroll deductions where necessary, and filed appropriate forms with the IRS and the Department of Labor as required under ERISA. Marshall Industries also contributed to the plan on the employee’s behalf, and issued annual summaries to its employees as required by ERISA. Furthermore, CNA offered the testimony of Everett T. Allen, Jr. (an expert and author of no-small-renown in the field), who testified after reviewing these materials that the plan in question was undoubtedly a valid plan under ERISA and that Villescas’ claims were thereby preempted. We agree with Judge Sobel’s conclusion that “[t]here is simply no evidence adduced to combat the evidence of [CNA] that the insurance here involved was part of an ERISA plan.”
 

 
 *1081
 
 In the face of this overwhelming evidence, we conclude that Villescas has failed to show a genuine issue of material fact sufficient to preclude summary judgment against her on this issue.
 

 Villescas also argues that even if the plan at issue is covered by ERISA, her claim falls within ERISA’s “savings clause.” As the United States Supreme Court noted, “the savings clause excepts from the pre-emption clause laws that ‘regulat[e] insurance.’”
 
 Pilot Life,
 
 481 U.S. at 45 (quoting 29 U.S.C. § 1144(b)(2)(A) (1988)). Villescas concedes that
 
 Pilot Life
 
 conclusively establishes that her state common law causes of action (fraud, breach of the covenant of good faith and fair dealing, and breach of fiduciary duties) must give way to ERISA preemption if it is determined that she is seeking to claim under an ERISA plan. The sole question she raises then is whether ERISA also preempts her statutory cause of action — breach of NRS 686A.310. Specifically, Villescas asserts that this statute is designed to regulate insurance companies and therefore is “saved” from preemption under ERISA.
 

 The United States Supreme Court in
 
 Pilot Life
 
 set up the framework in which such a claim must be analyzed. First, “a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry.”
 
 Id.
 
 at 50. NRS 686A.310 meets this requirement. NRS 686A.310 is part of a comprehensive statutory scheme entitled the Nevada Insurance Code. NRS 679A.010. Furthermore, NRS 686A.010 provides that “[t]he purpose of this chapter is to regulate trade practices in the business of insurance.”
 
 See also
 
 Ainsworth v. Combined Ins. Co., 104 Nev. 587, 592 n.1, 763 P.2d 673, 676 n.1 (1988),
 
 cert. denied,
 
 483 U.S. 958 (1989) (“In Nevada, insurance contracts are directly regulated by statutes which prohibit deceptive advertising and other unfair trade practices.”).
 

 This is not, however, the only hurdle that Villescas must cross in order to gain the protection of the savings clause.
 
 Pilot Life
 
 further requires that this court examine three criteria that:
 

 have been used to determine whether a practice falls under the “business of insurance” for purposes of the McCarran-Ferguson Act: “First, whether the practice has the effect of transferring or spreading a policyholder’s risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether
 
 *1082
 
 the practice is limited to entities within the insurance industry.”
 

 481 U.S. at 48-49 (citation omitted). In
 
 Pilot Life,
 
 the Supreme Court had little trouble reaching the conclusion that while Mississippi’s law regarding bad faith breach of contract might obliquely affect the relationship between the insurer and the insured, it was no more “integral” to that relationship than Mississippi’s general contract law.
 
 Id.
 
 at 50-51. In addition, the Court noted the powerful and comprehensive preemptive effect of ERISA with respect to actions alleging the improper processing of insurance claims.
 
 Id.
 
 at 54.
 

 The United States Supreme Court has had two occasions to address ERISA since
 
 Pilot Life.
 
 F.M.C. Corp. v. Holliday, 498 U.S. 52 (1990); Ingersoll-Rand v. McLendon, 498 U.S. 133 (1990). In both cases, the Court again emphasized the need for a broad interpretation of ERISA’s preemptive powers and the importance of avoiding conflicting state rules on ERISA-related matters.
 
 F.M.C.,
 
 498 U.S. at 64-65;
 
 Ingersoll-Rand,
 
 498 U.S. at 142.
 

 We turn then to the
 
 Pilot Life
 
 factors: The first factor, whether the law affects the riskspreading between the policy holder and the insured is only obliquely met by NRS 686A.310. “Risk” is described in Black’s Law Dictionary as follows: “In insurance law, the danger or hazard of a loss of the property insured; the casualty contemplated in a contract of insurance.” Black’s Law Dictionary 1193 (5th ed. 1979). Riskspreading then, is the pooling or averaging of policyholder’s risks.
 
 See generally
 
 R. Keeton,
 
 Insurance Law,
 
 § 1.2(b), at 3-9 (1971). The provisions of NRS 686A.310, however, do no such thing. Rather, they force the insurer to bear the legal risks associated with certain unfair insurance practices, such as misrepresentation (NRS 686A.310(1)(a)), or failure to process claims in a reasonable time (NRS 686A.310(1)(d)). The Fourth and Sixth Circuits reached the same conclusions about this factor as applied to the Insurance Codes of Kentucky and New York.
 
 See
 
 Int’l Resources v. N.Y. Life Ins., 950 F.2d 294, 300 (6th Cir. 1991),
 
 cert. denied,
 
 _ U.S. _, 112 S.Ct. 2941 (1992) (ERISA preempts claims against group health insurer under Kentucky statutes prohibiting unfair and deceptive insurance practices); DeBruyne v. Equitable Life Assur. Soc. of the U.S., 920 F.2d 457, 468 (7th Cir. 1990) (New York insurance law prohibiting certain unfair insurance practices not saved from ERISA preemption).
 

 The second factor, whether the statute regulates a practice which is an integral part of the insurer-insured relationship might
 
 *1083
 
 arguably be met here, but the nexus is very weak. The third factor, that the statute is limited in effect to entities in the insurance industry, is certainly met. We conclude, however, that these two factors cannot overcome the patent deficiencies of NRS 686A.310 with regard to the first factor of
 
 Pilot Life.
 

 Numerous courts have reached the same conclusion with very similar statutes. The California Supreme Court, sitting
 
 en banc,
 
 has held that the section of the California Insurance Code dealing with unfair trade practices (which is almost identical to Nevada’s) is preempted by ERISA and does not fall within the savings clause. Commercial Life Ins. v. Superior Court, 253 Cal.Rptr. 682 (Cal. 1988);
 
 see also, e.g.,
 
 Ramirez v. Inter-Continental Hotels, 890 F.2d 760, 763-64 (5th Cir. 1989) (Texas Insurance Code dealing with unfair and deceptive insurance practices not saved under ERISA); Anschultz v. Connecticut Gen. Life Ins. Co., 850 F.2d 1467 (11th Cir. 1988) (Florida statute providing private right of action to person injured by violations of state insurance code preempted by ERISA); In re Life Ins. Co. of N. Am., 857 F.2d 1190 (8th Cir. 1988) (Missouri statute prohibiting vexatious refusal to pay insurance claims preempted by ERISA); Kanne v. Connecticut Gen. Life Ins. Co., 867 F.2d 489 (9th Cir. 1988),
 
 cert. denied,
 
 492 U.S. 906 (1989) (California Insurance Code’s unfair trade practice provision not saved); Bishop v. Provident Life & Cas. Ins. Co., 749 F.Supp. 176, 178 (E.D.Tenn. 1990) (Tennessee statute prohibiting bad faith failure to pay insurance claims preempted by ERISA); Fischman v. Blue Cross & Blue Shield of Conn., 755 F.Supp. 528, 531 (D.Conn. 1990) (Connecticut Unfair Insurance Practices Act not saved from preemption by ERISA).
 

 It is useful to compare the above types of statutes with examples of statutes that
 
 are
 
 saved from ERISA preemption. The United States Supreme Court in Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 735 n.14 (1985), held that a mandated benefit law which required insurers to provide specific medical benefits whenever a Massachusetts resident purchased a certain kind of insurance was saved from preemption under ERISA. Similarly, the Ninth Circuit has held that a California law requiring that every group life policy sold in the state contain policy terms that allow a fired employee to convert his or her group policy to an individual policy survived ERISA preemption. Henkin v. Northrop Corp., 921 F.2d 864 (9th Cir.1990). These cases suggest that statutes which mandate benefits or policy terms are the type of statute which the savings clause was meant to cover.
 

 Finally, it is worth noting that NRS 686A.310(2) provides a private cause of action for “any damages sustained by the insured
 
 *1084
 
 as a result of the commission of any act set forth” in the section. This private right of action is just the sort of conflicting remedy that the Supreme Court expressly disapproved in
 
 Pilot Life
 
 when it emphasized the comprehensive nature of the remedies provided under ERISA.
 
 Pilot Life,
 
 481 U.S. at 52-53 (citing 29 U.S.C. § 1132(a) (1988) (the ERISA enforcement provisions)).
 

 We add Nevada’s voice to the growing body of case law holding state unfair insurance practice claims to be preempted by ERISA and conclude that Chapter 686A of the Nevada Insurance Code is preempted by ERISA when applied to a valid ERISA plan.
 

 We have also considered Villescas’ other contentions of error, and we conclude that they lack merit. The summary judgment entered by the district court is affirmed.
 

 [1]
 

 ERISA is a comprehensive federal statutory scheme which regulates Employee Benefit Plans. 29 U.S.C. § 1001-1461 (1988).
 

 [2]
 

 29 C.F.R. § 2510.3-1(j) (1987) (describes four criteria, all of which must be met, for a plan to be excluded from ERISA);
 
 see, e.g., Lambert
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 259 Cal.Rptr. 398, 402 (Cal.Ct.App. 1989). For example, the regulation states that “[t]he sole functions of the employer . . . with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer.” Here, the evidence is uncontradicted that Marshall Industries did far more than this with regard to administering the plan.