**Patrick BRANDNER, M.D., individually, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, a Maine Corporation; Does I through X; and Roe Business Entities I through X, inclusive, Defendants.**

**No. CV-S-00-1528 RLH(RJJ).**

United States District Court, D. Nevada.

April 12, 2001.

Aaron Maurice, Brittany Wood, Rawlings, Olson, Cannon, Las Vegas, NV, for Brandner, Patrick, Plaintiffs.

Von Heinz, Lewis & Roca, LLP, Las Vegas, NV, for Unum Life Insurance Co. of America, Defendants.

## ORDER

(Motion to Determine Applicable Law-# 8; Motion for Summary Judgment-# 9; and Motion to Strike-# 12)

HUNT, District Judge.

Before the Court are **Plaintiff's Motion to Determine Applicable Law** (# 8, filed January 25, 2001), **Defendant's Motion for Summary Judgment** (# 9, filed January 26, 2001) and **Defendant's Motion to Strike Jury Demand** (# 12, filed February 1, 2001.) The Court has also considered Defendant's Opposition to Plaintiff's Motion to Determine Applicable Law (# 13, filed February 12, 2001), Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Determine Applicable Law (# 20, filed February 26, 2001), Plaintiff's Opposition to Defendant's Motion for Summary Judgment (# 14, filed February 12, 2001), Plaintiff's Opposition to Defendant's Motion to Strike Jury Demand (# 17, filed February 14, 2001), and Defendant's Reply in Support of Motion for Summary Judgment and Reply in Support of Motion to Strike Jury Demand (# 21, filed February 26, 2001).

Because the Court finds that Plaintiff's claims are preempted under Federal law, the Court must grant Defendant's Motion for Summary Judgment, without prejudice, and permit Plaintiff to file an amended complaint asserting valid claims under Federal law.

### *Procedural History*

On December 4, 2000, Plaintiff, Patrick Brandner, M.D., filed a lawsuit in state District Court, Clark County, Nevada, against Defendant, UNUM Life Insurance Company of American ("UNUM"), asserting a state statutory claim of Unfair Insurance Practices, pursuant to N.R.S. § 686A.310, *et seq.*, and state common law claims of Insurance Bad Faith, Breach of Fiduciary Duty, Breach of Contract, and Declaratory Relief.

UNUM removed the case to federal court on December 26, 2000, contending that Plaintiff's cause of action is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and invoked the Court's federal question jurisdiction over the matter. On January 4, 2001, Defendant filed a Supplemental Notice of Removal, invoking this Court's subject matter jurisdiction based upon the additional ground of diversity of citizenship of the parties.

On January 25, 2001, Plaintiff filed a Motion to Determine Applicable law seeking a determination that the Court lacks federal question jurisdiction over his Complaint, because his state law claims are not preempted by ERISA.

The following day, UNUM filed its Motion for Summary Judgment, asserting that each of Plaintiff's causes of action are

preempted by ERISA. On February 1, 2001, Defendant also filed its Motion to Strike Jury Demand upon the asserted ground that Plaintiff does not have the right to trial by jury in an ERISA action.

Because all three Motions turn upon the same dispositive issue—whether or not ERISA preempts Plaintiff's state law claims—the Court addresses all three Motions simultaneously and concludes that Plaintiff's claims are preempted under ERISA.

### Background

This lawsuit involves a dispute regarding the calculation of Dr. Brandner's benefits under an ERISA long term disability insurance policy (the "Policy") purchased from UNUM.

On or about August 19, 1995, Dr. Brandner injured his back, and as a result, became disabled as defined under the terms of the Policy. Subsequently, Dr. Brandner filed a notice of claim and sworn proof of loss with Defendant.

Dr. Brandner began receiving monthly payments under the Policy on or about November 19, 1995. Since that date, Dr. Brandner asserts UNUM has transferred his claim from one adjuster to another, and each of the various UNUM representatives assigned to his claim have taken distinct and contrary positions regarding the calculation of his benefits.

The various recalculations made by UNUM representatives and the events surrounding those recalculations are not pertinent to the present Motions. It is sufficient to note that at the time Dr. Brandner filed the present lawsuit, UNUM had already recalculated Dr. Brandner's benefits numerous times, and the most recent recalculation resulted in UNUM's assertion that Dr. Brandner owes them $216,819.37 for overpayments he received from November 19, 1996 through March 18, 2000. As a result of this recalculation, UNUM ceased making disability payments to Dr. Brandner and demanded repayment of the amount allegedly overpaid.

Dr. Brandner filed the present lawsuit seeking to have his disability benefits recalculated according to the terms of his insurance contract and also seeking damages for UNUM'S termination of his benefits during his appeal of the recalculation.

### Analysis

UNUM asserts that Dr. Brandner's five causes of action are preempted by ERISA and therefore, UNUM is entitled to summary judgment of those claims, as a matter of law.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only "where the record before the court on the motion reveals the absence of any material facts and [where] the moving party is entitled to prevail as a matter of law." *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982) (*quoting Portland Retail Druggists Ass'n v. Kaiser Foundation Health Plan*, 662 F.2d 641, 645 (9th Cir.1981)), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Securities and Exchange Comm'n v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir.1982) (citations omitted).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and inferences in the light most favorable to the responding party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (footnote omitted). *See also*, Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir.1982)

(citation omitted), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once this burden has been met, "[t]he opposing party must then present specific facts demonstrating that there is a factual dispute about a material issue ."*Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982) (citation and internal quotes omitted).

Therefore, the issue before this Court in deciding Defendant's Motion for Summary Judgment is whether the present case contains any genuine issues of material fact that preclude summary judgment pursuant to Fed.R.Civ.P. 56(c) or whether judgment is appropriate as a matter of law.

"ERISA comprehensively regulates, among other things, employee welfare benefit plans that, through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability or death." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting ERISA § 3(1), as set forth in 29 U.S.C. § 1002(1)).

The Supreme Court has repeatedly held that the question of whether federal law preempts state law is one of congressional intent, and that Congress' purpose is the "ultimate touchstone." *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978); *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963).

Congress' stated purposes in implementing ERISA is:

> to protect... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by es-

tablishing standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts. ERISA § 2, as set forth in 29 U.S.C. § 1001(b). *See also, Pilot Life,* 481 U.S. at 44, 107 S.Ct. 1549.

■ "As part of this closely integrated regulatory system Congress included various safeguards to preclude abuse and 'to completely secure the rights and expectations brought into being by this landmark reform legislation.'" *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (quoting S.Rep. No. 93–127, p. 36 (1973)). In furtherance of its goals, Congress drafted three statutory provisions relating to the pre-emptive effect of ERISA, described by the Supreme Court as "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life,* 481 U.S. at 46, 107 S.Ct. 1549.

The first preemption provision, the "Preemption Clause," provides that, "Except as provided in subsection (b) of this section [the 'Savings Clause'], the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." ERISA § 514(a), as set forth in 29 U.S.C. § 1144(a). *See also, Pilot Life,* 481 U.S. at 44–45, 107 S.Ct. 1549.

The second preemption provision, commonly referred to as the "Savings Clause," states that, "Except as provided in subparagraph (B) [the 'Deemer Clause'], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities." ERISA § 514(b)(2)(A), as set forth in 29 U.S.C.

§ 1144(b)(2)(A). *See also Pilot Life,* 481 U.S. at 45, 107 S.Ct. 1549.

The third preemption provision, the "Deemer Clause," qualifies the exception set forth in the Savings Clause and specifies that, no "employee benefit plan ... shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance... for purposes of any State law purporting to regulate insurance companies [or] insurance contracts ..." ERISA § 514(b)(2)(B), as set forth in 29 U.S.C. § 1144(b)(2)(B). *See also Pilot Life,* 481 U.S. at 45, 107 S.Ct. 1549.

In sum, the ERISA preemption provisions provide that:

> "If a state law 'relate[s] to ... employee benefit plan[s],' it is preempted. The savings clause excepts from the preemption clause laws that 'regulate insurance.' The deemer clause makes clear that a state law that 'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance plan."

### ERISA's "Relate To" Preemption Clause

Defendant seeks summary judgment of Plaintiff's cause of action upon the ground that Dr. Brandner's state law claims "relate to" an employee benefit plan, and are therefore, preempted by ERISA.

Plaintiff contends that the scope of "relate to" preemption has recently been markedly narrowed, and that under this new scope of "relate to" preemption, Plaintiff's claims are not preempted by ERISA, because they do not "relate to" an employee benefit plan.

The Court finds that Dr. Brandner's claims clearly "relate to" his ERISA benefit plan, and therefore, fall within ERISA's preemption clause.

Plaintiff bases his argument that his claims do not "relate to" an ERISA plan on a novel interpretation of the Supreme Court decision in *New York State Confer-* *ence of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). According to Plaintiff, in *Travelers,* the Supreme Court dramatically changed the common law on this issue and held that laws bearing indirectly but substantially on *all insured benefit plans* are within the "relate to" preemption, but "laws that regulate only the *insurer,* or the way in which it may sell insurance, do not 'relate to' benefit plans." *See* Pl. Opp. to Summ. J. at 10 (citing *Travelers,* 514 U.S. at 664, 115 S.Ct. 1671) (quoting *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (emphasis added by Plaintiff)).

 However, in *Travelers,* the Supreme Court did not make the bright-line distinction urged by Plaintiff, and did not overrule the general rule that, "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. 478. The issue presented in *Travelers* was whether or not ERISA preempted a New York State statute that required hospitals to collect surcharges from patients covered by a commercial insurer, but not from patients insured by Blue Cross/Blue Shield, and subjected certain HMO's to hospital surcharges that varied according to the number of Medicaid recipients each HMO enrolled. The Court held that the New York statute did not "relate to" ERISA, because it was a general health care regulation that had only an indirect economic influence on covered plans.

Importantly, the Court noted that the indirect economic influence did not preclude uniform administrative practice or the provision of a uniform interstate bene-

fit package, and simply bore on the costs of benefits and relative costs of competing insurance to provide them. *See Travelers,* 514 U.S. at 660, 115 S.Ct. 1671.

Clearly concerned with avoiding the slippery slope of applying ERISA preemption to all state regulations that have only an indirect economic effect on an ERISA benefit plan, the Court emphasized:

> It remains only to speak further on a point already raised, that any conclusion other than the one we draw would bar any state regulation of hospital costs.... This would be an unsettling result and all the more startling because the several States, including New York, regulated hospital charges to one degree or another at the time ERISA was passed. *Id.* at 664, 115 S.Ct. 1671.

■ The state laws upon which Dr. Brandner bases his claims, bear no resemblance to the regulatory scheme upheld in *Travelers.* Dr. Brandner seeks direct enforcement of the provisions of his ERISA benefit plan, not through ERISA's exclusive enforcement provisions, but through state causes of action. Dr. Brandner's lawsuit clearly "relates to" his ERISA employee benefit plan, because he seeks to enforce the terms of the plan itself and the terms of his ERISA plan are the critical factor in determining UNUM's liability. *See Ingersoll–Rand,* 498 U.S. at 139–140, 111 S.Ct. 478 ("We are not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan.... Here, the existence of a pension plan is a critical factor in establishing liability under the [State's law]. As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension *plan* itself.")

*ERISA's Preemption "Savings Clause"*

■ Although the Court finds that Dr. Brandner's claims "relate to" his ERISA

benefit plan, Dr. Brandner's claims may be saved from preemption under ERISA if his state causes of action fit within ERISA's Savings Clause.

Plaintiff concedes that if the Court determines that his causes of action "relate to" his ERISA benefit plan, his Breach of Contract claim and Declaratory Relief claim are preempted. (Pl. Opp. to Summ. J. at 12, fn.7). Therefore, the issue before the Court is whether Dr. Brandner's claims for Insurance Bad Faith, Unfair Insurance Practices and Breach of the Fiduciary Duty of the Insurer–Insured Relationship are saved from preemption under ERISA's Savings Clause.

Plaintiff argues that his remaining claims have been brought pursuant to state laws that regulate insurance, and therefore, fit within the exception to preemption set forth in ERISA's Savings Clause. However, Plaintiff's arguments fails to recognize that his claims contravene the policies and purposes of ERISA and clearly are preempted by ERISA's civil enforcement provisions.

Plaintiff argues that his claims satisfy the test for determining whether a state law is saved from ERISA preemption set forth by the Supreme Court in *UNUM Life Ins. Co. of Am. v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). In *Ward,* the Court addressed the issue of whether or not California's "notice-prejudice rule," a rule requiring an insurer to prove actual prejudice before asserting a defense to liability premised upon an insured's failure to provide timely notice of a claim, fits within ERISA's Savings Clause. The Court resolved the issue by applying a two-part test. First, the Court applied a "Common Sense Test" and asked "whether, 'from a common sense view of the matter,' the contested prescription regulates insurance." *Ward,* 526 U.S. at 367, 119 S.Ct. 1380. Second, the Court applied

the "McCarran–Ferguson Test" and considered three factors: (1) whether the law has the effect of transferring or spreading a policyholder's risk; (2) whether the law is an integral part of the policy relationship between the insurer and the insured; and (3) whether the law applies only to entities within the insurance industry. *See id.* (quoting *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. 2380).

As an initial matter, the Court emphasizes that the plaintiff in *Ward* brought a claim under ERISA and sought only to uphold the trial court's application of the notice-prejudice rule in reaching a judgment in his favor. Thus, the Court in *Ward* did not address whether a cause of action seeking enforcement of the terms of an ERISA plan under state law could avoid preemption under the Savings Clause, and Plaintiff's citation to *Ward* as authority for such an argument is unpersuasive.

At first blush, Plaintiff's claims appear to pass the Common Sense Test, because his claims are expressed in terms specific to the insurance industry. However, the Court can discern no meaningful distinction between Dr. Brandner's claims for Insurance Bad Faith and Breach of Fiduciary Duty of the Insurer–Insured Relationship and the general common law claims of bad faith and breach of fiduciary duty that could be brought under Nevada's general tort or contract law.

■ Nevertheless, whether or not the Court finds that Dr. Brandner's state law claims satisfy the Common Sense Test, Dr. Brandner's claims are preempted under

ERISA because they fail to satisfy the McCarran–Ferguson Test.

The first factor to be considered by the Court, is whether Nevada claims for Insurance Bad Faith, Unfair Insurances Practices and Breach of Fiduciary Duty have the effect of transferring or spreading a policyholder's risk.

Plaintiff argues that his claims meet the first McCarran–Ferguson factor, because Nevada's insurance laws impose a duty upon insurance companies to deal in good faith in investigating an insured's claim. Therefore, Plaintiff reasons, the three regulations increase the need for insurance companies to carefully investigate claims, thereby indirectly increasing the insurance company's costs of doing business in Nevada.[1]

■ The Court finds Plaintiff's argument tenuous at best. All contracts are governed under a general rule of good faith and fair dealing, and Plaintiff's assertion that somehow insurance companies will feel compelled to investigate insured's claims more thoroughly in Nevada because of a heightened good faith duty is not persuasive. In addition, as discussed *infra*, Plaintiff's argument compels the Court to find that Plaintiff's state causes of action conflict with the policy goals Congress sought to promote through passage of ERISA and its civil enforcement provisions.

The second factor to be considered by the Court is whether the Nevada laws have become an integral part of the policy

---

1. Plaintiff cites *Ward* as support for his assertion that "Increased costs to insurance companies have the effect of raising premiums which are passed on to insureds and, in turn, spread the insurance company's risk among its policyholders." Pl. Opp. to Summ. J. at 17 (citing UNUM, 526 U.S. at 374, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1389)). However, the Court notes that the Supreme Court did not adopt that reasoning, but merely quoted an argument put forth by the United States as amicus curiae. The Supreme Court stated, "We need not pursue this point, because the remaining McCarran–Ferguson factors, verifying the common-sense view, are securely satisfied."

relationship between the insurer and the insured.

Plaintiff argues that the second prong of the McCarran–Ferguson Test is met, because the claims impose a duty upon insurance companies to deal in good faith when investigating insured's claims, and this duty of good faith becomes an implied term in every Nevada insurance policy. Plaintiff asserts this is much like the notice-prejudice rule upheld in California, because it changes the bargain between the insured and insurer.

Once again, however, the Court finds that the duty of good faith is implied in all contracts, not just Nevada insurance contracts, and therefore, the Nevada laws do not change the bargain between the insurer and insured.

The final McCarran–Ferguson factor to be considered by the Court is whether the practice is limited to entities within the insurance industry.

Plaintiff asserts that Nevada's Unfair Insurance Practices Act was specifically enacted to regulate the business of insurance in Nevada, and his claims for Insurance Bad Faith and Breach of the Fiduciary Duty of the Insured–Insurer Relationship are regulations limited to the insurance industry. Additionally, Plaintiff contends that Nevada's recognition of similar causes of action outside the insurance industry does not expand the scope of the specific claims asserted by Plaintiff.

The Court finds this third factor superficially satisfied, because Plaintiff's claims are expressed in terms specific to the insurance industry, but does acknowledge that Nevada recognizes similar causes of action outside the insurance industry.

 Therefore, the Court finds that Plaintiff's causes of action fail to satisfy the three part McCarran–Ferguson Test, and are not "saved" from preemption under ERISA. Even if the Court were to find that Plaintiff's claims are brought under Nevada laws that "regulate insurance," however, the Court would still be compelled to find that Plaintiff's causes of action are preempted under ERISA's civil enforcement provisions. Any conclusion to the contrary would directly undermine Congress' intent in implementing ERISA and contradict prior case law which overwhelmingly indicates that state causes of action seeking to enforce the terms of an ERISA plan are preempted.

In arguing that his claims fall within ERISA's Savings Clause, Plaintiff emphasizes that the Nevada laws upon which his claims are based, compel Defendant to modify the manner in which it administers ERISA benefit plans in Nevada to avoid liability under Nevada law. This is precisely the result Congress sought to avoid when it passed ERISA. As stated by the Supreme Court:

> Section 514(a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created would work to the detriment of plan beneficiaries. Allowing state based actions like the one at issue here would subject plans and plan sponsors to burdens not unlike those that Congress sought to foreclose through § 514(a). *Ingersoll–Rand*, 498 U.S. at 142, 111 S.Ct. 478 (internal citations omitted).

In *Pilot Life*, the Supreme Court accepted the argument of the United States Government that, "Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan partici-

pants and beneficiaries asserting improper processing of a claim of benefits and that the varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress." *Pilot Life,* 481 U.S. 41, 52, 107 S.Ct. 1549, 95 L.Ed.2d 39 (citing Brief for United States as Amicus Curiae 18–19); *See also, Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 494 (9th Cir.1988) (quoting the above language and holding, "We do not find it possible to read this language in a way that permits a state statute. . . .to supplement the ERISA civil enforcement provisions available to remedy improper claims processing.")

Following the holding in *Pilot Life* and *Ingersoll–Rand*[2], both the Ninth Circuit and the Nevada Supreme Court have consistently held that state causes of action such as Plaintiff's are preempted by ERISA. *See Davidian v. Southern Calif. Meat Cutters Union and Food Employees Benefit Fund,* 859 F.2d 134 (9th Cir.1988) (holding that state law claims for bad faith, fraud, deceit and breach of fiduciary duty, relating to administration of ERISA plan are preempted); *Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124 (9th cir. 1992) (holding that claims against employer for breach of the implied covenant of good faith and fair dealing and insurance bad faith, among other state law claims, are preempted by ERISA); *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489 (9th Cir.1988) (holding that state law claims of breach of contract, breach of

fiduciary duty and unfair insurance practices are preempted by ERISA); *Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812 (9th Cir.1992) (holding state law claims relating to an ERISA benefit plan, including claim under Montana's unfair claims settlement practices statute, are preempted); *Villescas v. CNA Ins. Cos.,* 109 Nev. 1075, 864 P.2d 288 (1993) (concluding, "We add Nevada's voice to the growing body of case law holding state unfair insurance practice claims to be preempted by ERISA and conclude Chapter 686A of the Nevada Insurance Code is preempted by ERISA when applied to a valid ERISA plan.")

### Conclusion

Dr. Brandner seeks to enforce the terms of his ERISA employee benefit plan through causes of action brought under Nevada state law. The Supreme Court, the Ninth Circuit, the Nevada Supreme Court and this Court agree that Congress intended that ERISA preempt state causes of action seeking to enforce the terms of an ERISA benefit plan, and drafted ERISA's preemption and civil enforcement provisions to promote uniformity of enforcement. Thus, Defendant is entitled to summary judgment of Plaintiff's state law causes of action. The Court will grant Defendant's motion, without prejudice, so that Dr. Brandner may file an amended complaint within thirty (30) days of the date of this Order asserting any valid claims he may have under ERISA.

---

**2.** Plaintiff appears to believe that, in *Travelers* and *Ward,* the Supreme Court overruled or at least drastically modified its prior holdings in *Pilot Life* and *Ingersoll–Rand.* However, the Supreme Court was careful to avoid that implication in drafting its decision in *Travelers,* expressing its "fidelity to the views expressed in our prior opinions on the matter." *Travelers,* 514 U.S. at 668, 115 S.Ct. 1671 (citing *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct.

478, *Pilot Life,* 481 U.S. at 47–48, 107 S.Ct. 1549 and *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Moreover, as discussed *supra,* the Supreme Court's decision in *Ward* did not address causes of action seeking enforcement of an ERISA benefit plan brought pursuant to state law, and therefore, *Ward* does not modify prior case law holding such causes of action to be preempted.

 

The Court's decision to grant Defendant's Motion for Summary Judgment renders Plaintiff's Motion to Determine Applicable Law and Defendant's Motion to Strike Jury Demand moot.

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (# 9) is GRANTED, without prejudice, and Plaintiff is granted leave to amend his complaint within thirty (30) days of the date of this Order.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Jury Demand (# 12) and Plaintiff's Motion to Determine Applicable Law (# 8) are DENIED as moot.