Donald M. **PACHUTA**, M.D., Plaintiff,

v.

**UNUMPROVIDENT CORPORATION, UNUM Life Insurance Company of America, Provident Life and Accident Insurance Company, the Paul Revere Life Insurance Company, et al.** Defendants.

No. CIV. 01–00199 ACKBMK.

United States District Court, D. Hawai'i.

March 19, 2002.

Daivd R. Harada-Stone, Jerry M. Hiatt, Law Offices of Jerry M. Hiatt, Kamuela, HI, for plaintiff.

John R. Lacy, Kathleen A. Kelly, Randy L.M. Baldemor, Emily Reber Porter, Goodsill Anderson Quinn & Stifel, LLP, Honolulu, HI, for defendants.

### *ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

KAY, District Judge.

### *BACKGROUND*

This case arises out of an insured's alleged disability and his multiple insurers' refusal to pay on the filed claims. Plaintiff Donald M. Pachuta, M.D. ("Plaintiff" or "Pachuta") began to work for Kauai Medical Center ("KMC") in 1992. Pachuta al-

leges that sometime in mid–1998, he started experiencing symptoms that included loss of memory, an increasing inability to synthesize information, the transposition of numbers and visual-perceptual problems. Pachuta asserts that as a result of these conditions worsening, he ceased practicing medicine. Plaintiff filed claims in 1999 with varying insurance companies on four separate disability insurance policies, all of whom began paying Plaintiff pursuant to each policy. In the fall of 2000, the payments on all four policies were discontinued.

Pachuta filed this lawsuit on March 3, 2001 over the denial of payments by the four plans. The first three policies were individual disability insurance policies purchased by Pachuta ("Plans I–III").[1] Unlike the individual plans, Defendant Unumprovident Corporation ("UNUM" or "Defendant") provided Pachuta's fourth policy, which was issued as a long-term group disability insurance policy to Wilcox Health Systems ("Wilcox") on November 1, 1995 ("Plan IV"). Wilcox was the parent of Pachuta's employer.[2]

Plaintiff sues each insurer under four theories of recovery: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) unfair and deceptive trade practices; and (4) remedies arising under the Employee Retirement Income Security Act ("ERISA"). While Plaintiff's suit involves a number of defendants and insurance policies, UNUM's motion, filed January 16, 2002, involves only its group policy issued to Wilcox. UNUM moves for summary judgment against all of Plaintiff's state-based claims and for a damage limitation upon Plaintiff's ERISA-based claim.

## STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.,* 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary

---

**1.** These policies are not relevant to UNUM's motion for summary judgment because UNUM moves only against the claims filed against its group plan.

**2.** Pachuta began working for Kauai Medical Clinic on May 1, 1996, which is listed as a subsidiary of Wilcox under the UNUM group plan.

judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more per-suasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

***Discussion***

■■■ UNUM contends, and Plaintiff concedes, that Plan IV is governed by ERISA.[3] Defendant moves for summary judgment against Plaintiff's claims for breach of contract, bad faith tort under *Best Place, Inc. v. Penn America Ins. Co.,* 82 Hawai'i 120, 920 P.2d 334 (1996) and deceptive trade practices under Hawaii statutory law based upon ERISA's preemption clause. In his opposition to UNUM's motion, Plaintiff only defends the bad faith tort count by arguing that it avoids preemption under ERISA's "saving" clause, 29 U.S.C. § 1144(b)(2)(A).

*A. ERISA Background*

■■ Congress enacted ERISA for the purpose of "protect[ing] interstate commerce and the interests of participants in

---

**3.** Defendant spends the majority of its motion arguing that Plan IV was governed by ERISA. Plaintiff concedes that ERISA covers Plan IV. Pl. Mem. in Opp. at 2 ("Although for purposes of this motion [Plaintiff] does not deny that [Plan IV] ... is covered by ERISA ...."). The Court notes that Plan IV is clearly covered by ERISA. "For an employee welfare benefit plan or program to come within ERISA's sphere of influence, it must, among other things, be 'established or maintained' by an employer, an employee organization, or both." *Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995). The Department of Labor created a four-pronged regulation to describe when a plan falls within the "safe harbor" exemption from ERISA coverage: (1) the employer cannot contribute to

the program; (2) employee participation must be completely voluntary; (3) the employer may not endorse the program; and (4) the employer may not receive any consideration for its limited administrative involvement. 29 C.F.R. § 2510.3–1(j). To be exempt from ERISA, a plan must satisfy *all* four of the above prongs of the safe harbor provision. *Stuart v. UNUM Life Ins. Co.,* 217 F.3d 1145, 1153 (9th Cir.2000); *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489 (9th Cir. 1988). Here, Plan IV was not completely voluntary because participation was a condition of employment for doctors. UNUM urges, and Plaintiff does not contest, that Wilcox and KMC also endorsed Plan IV. Accordingly, it is clear that Plan IV is not exempt from ERISA under the safe harbor provisions.

employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). While the Act's title conveys ERISA's original purpose, which was to regulate pension plans, ERISA also applies to other employee benefits, such as disability insurance provided by employers. 29 U.S.C. § 1002(1). ERISA preempts state law claims that are "related to" an ERISA-regulated employee benefit plan. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The preemption clause itself was intended to be limited by ERISA's saving clause. 29 U.S.C. § 1002(1). This exception to ERISA's liberal preemption exempts state laws that "regulate insurance." With the saving clause, Congress clearly intended that regulation of insurance remain within the power of the states.

A number of cases have examined the inherent tension between ERISA's preemption and saving clauses. In *Pilot Life Insurance v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court confirmed that state law claims are preempted if they "relate to" an employee benefit plan but are exempted from preemption if they "regulate insurance." *Pilot Life* specifically held Mississippi's bad faith tort law, which has similar qualities to Hawaii's tort, applied more broadly than the regulation of insurance. *Id.* Thus, in *Pilot Life*, the Court found that this tort claim was preempted by ERISA, because it was a law of general application to all contracts and accordingly not "specifically directed toward" the regulation of insurance. *Pilot Life*, 481 U.S. at 50–51, 107 S.Ct. 1549. In *Pilot Life*, the Solicitor General argued, and the Supreme Court agreed, that ERISA's civil enforcement remedy was exclusive; the Court noted that "the federal scheme would be completely undermined if ERISA plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 54, 107 S.Ct. 1549.

In *UNUM Life Insurance. Co. of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), the Supreme Court revisited this tension manifest in ERISA. In *Ward*, the insurer refused the plaintiff's disability claim because of a late filing. The plaintiff argued that California law required the insurer to show prejudice by the plaintiff's tardiness under the "notice-prejudice rule." *Id.* The insurer maintained that ERISA preempted California's notice-prejudice rule. As in the case at bar, the issue was whether the state rule was a state law "regulating insurance." The Supreme Court held unanimously that the rule regulated insurance. The Court distinguished its *Pilot Life* holding by commenting that the "[California] rule firmly applied to insurance contracts, not a general principle guiding a court's discretion in a range of matters." *Id.* at 372, 119 S.Ct. 1380. The Court also reasoned that application of the McCarran–Ferguson Act (15 U.S.C. § 1011 et seq.) militated in favor of the same decision.

1. Applicable Standard for ERISA's Saving Clause

■ The Supreme Court fashioned out of its cases addressing ERISA's preemption and saving clauses a two-part test for determining whether a state law is exempted through the saving clause from ERISA preemption. First, the Court should appraise the manifest consideration of whether the law in question "fit[s] a common sense understanding of insurance regulation." Second, the Court should additionally evaluate the three specific factors under the McCarran–Ferguson Act, which are whether: (1) the regulation has the effect of transferring or spreading a policyholder's risk; (2) the regulation is an integral part of the policy relationship between the insurer and the insured; and (3) the regulation is limited to entities within the insurance industry. *Ward*, 526 U.S. at 359, 119 S.Ct. 1380. The *Ward* Court

expressly rejected the defendant insurer's assertion that a state regulation must satisfy all three of these factors in order to "regulate insurance" under ERISA's saving clause. *Id.* at 373, 119 S.Ct. 1380. Instead, the Court adopted a more flexible approach in which the three factors are "considerations to be weighed." *Id.*

### 2. Application of Legal Standard to Bad Faith Claim

Plaintiff alleges a cause of action for a "bad faith" tort arising under *Best Place, Inc. v. Penn America Ins. Co.*, 82 Hawai'i 120, 920 P.2d 334 (1996).[4] The issue presented is whether this claim is preempted without any exemption by ERISA. The issue of similar state-based bad faith claims has raised diverse results among varying federal courts. The Court notes that since *Ward*, courts have been divided over whether bad faith tort claims regulate insurance and thus are not preempted by ERISA. *See, e.g., Lewis v. Aetna U.S. Healthcare, Inc.*, 78 F.Supp.2d 1202 (N.D.Okla.1999) (holding Oklahoma's bad faith claim regulates the insurance industry and is saved from ERISA preemption); *Norman v. Paul Revere Life Ins. Co.*, No. C99–5463 JKA, 2000 WL 33316829 (W.D.Wash.2000) (ruling that Washington's common law rule of bad faith, codified in its insurance regulations and limited to the insurance industry, is a law that regulates insurance and is spared from preemption); *Colligan v. UNUM Life Ins. Co. of America*, No. Civ.A. 00–K–2512, 2001 WL 533742 (D.Colo.2001) (holding that Colorado's tort of bad faith breach of an insurance contract is a law regulating insurance and is exempt from preemption). *But see Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292, 1298 (11th Cir.2001) (holding that Alabama's bad faith tort claim is preempted under ERISA); *Chamblin v. Reliance Standard Life Ins. Co.*, 168 F.Supp.2d 1168, 1177 (N.D.Cal.2001) (holding California's bad faith tort claim preempted by ERISA); *Brandner v. Unum Life Ins. Co. of America*, 152 F.Supp.2d 1219 (D.Nev.2001) (holding that bad faith claim was too general to be considered "regulating insurance"); *Jabour v. CIGNA Healthcare of Cal., Inc.*, 162 F.Supp.2d 1119, 1128 (C.D.Cal.2001)(finding California's bad faith tort claim preempted).

### (A) Development of the Bad Faith Tort in Hawaii

 In 1996, the Hawaii Supreme Court adopted a cause of action for bad faith denial of insurance benefits. In *Best Place*, the Hawaii Supreme Court noted that "[e]very contract imposes upon each party a duty of good faith and fair dealing . . . ." 82 Hawai'i at 124, 920 P.2d 334. In that case, the Hawaii Supreme Court was persuaded that there are sound reasons for recognizing a cause of action in tort for breach of the implied covenant of good faith and fair dealing in the insurance context. *Id.* at 127, 920 P.2d 334. Thus, Hawaii now recognizes a cause of action for the tort of first-party bad faith, i.e., bad faith denial of insurance benefits.[5] *Id.*

---

**4.** The Court observes that Plaintiff styled count II as "breach of covenant of good faith and fair dealing." While this claim may be understood as a contract claim, the parties have identified and analyzed this claim as one arising under Hawaii's bad faith tort. The Court further notes Plaintiff does make one allusion to "bad faith" in Count II. Accordingly, the Court will evaluate the claim as such.

**5.** The Hawaii Supreme Court based its decision upon the test articulated and adopted by the California Supreme Court in *Gruenberg v. Aetna Insurance Company*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1040 (1973). The California Supreme Court imposed tort liability, above and beyond contract damages, on an insurer that deprived a policyholder of benefits and, without proper cause, breached the implied covenant of good faith and fair dealing. *Id.* at 574, 108 Cal.Rptr. 480, 510

at 131–32, 920 P.2d 334. The Hawaii Supreme Court expressly opined that the tort of bad faith is not a tortious breach of contract, but rather a separate and distinct wrong which arises from the "breach of a duty imposed as a consequence of the relationship established by" the insurance policy. *Id.* at 131–32, 920 P.2d 334. In fact, an insurer who ultimately pays the claim at issue may be held liable for bad faith in the event of unreasonable delay. *Id.* at 132, 920 P.2d 334. The standard for a bad faith claim in the insurance context is as follows:

> the insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payment of benefits will warrant recovery for compensatory damages under the Gruenberg test. However, conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith. In addition, an erroneous decision not to pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages. Rather the decision not to pay a claim must be in "bad faith."

*Best Place*, 82 Hawai'i at 133, 920 P.2d 334 (citations omitted).

(B) Whether the *Best Place* Tort regulates insurance

The first task in evaluating whether a given state law is saved from ERISA preemption is whether, from a "common sense view of the matter," the contested prescription regulates insurance. *Ward*, 526 U.S. at 367, 119 S.Ct. 1380 *citing Metro. Life*, 471 U.S. at 740, 105 S.Ct. 2380. The

P.2d 1032. According to a recent decision of a district court for the Northern District of California, the *Gruenberg* tort is not saved from preemption under ERISA. *See Chamblin v. Reliance Standard Life Ins. Co.*, 168 F.Supp.2d. 1168, 1175 (N.D.Cal.2001); *ac-*

Court finds conclusively that the *Best Place* bad faith tort does not "regulate insurance." Initially, the Court observes that it appears that the "insurer" bad faith tort regulates insurance but several reasons militate against that conclusion. First, the Hawaii Supreme Court explicitly recognized the tort as having application outside of the insurer bad faith context. *Best Place*, 82 Hawai'i at 124, 920 P.2d 334. Indeed, the *Best Place* court offered the following regarding the rationale of the insurer bad faith tort:

> [t]ort actions for breach of covenants implied in certain types of contractual relationships are most often recognized where the type of contract involved is one in which the plaintiff seeks something more than commercial advantage or profit from the defendant. *When dealing with an innkeeper, a common carrier, a lawyer, a doctor or an insurer, the client/customer seeks service, security, peace of mind, protection or some other intangible. These types of contracts created special, partly noncommercial relationships, and when the provider of the service fails to provide at the very time which was the implicit objective of the making of the contract, then contract damages are seldom adequate,* and the cases have generally permitted the plaintiff to maintain an action in tort as well as contract.

*Best Place*, 82 Hawai'i at 131–32, 920 P.2d 334 *citing Rawlings v. Apodaca*, 151 Ariz., 149, 159, 726 P.2d 565 (1986) (emphasis added). The Hawaii Supreme Court adopted this language from the Arizona Supreme Court in *Rawlings*, which further shows that the Hawaii tort differs to some

cord *Jabour v. CIGNA Healthcare of California, Inc.*, 162 F.Supp.2d 1119, 1128 (C.D.Cal. 2001) (holding that *Ward* did not change rule that California common-law bad faith claims were preempted by ERISA).

degree from the California *Gruenberg* tort that was exclusively applied to the insurance industry. While the *Best Place* court circumscribed the tort to a "bad faith cause of action in the first-party insurance context," the court did not limit its application to only the insurance context. *Id.* at 132, 920 P.2d 334 (holding that this type of claim "will not necessarily extend to all types of contracts.").

The Court notes that UNUM argues forcefully that the *Best Place* tort is more analogous to *Pilot Life* than the saved notice-prejudice rule in *Ward*. In particular, UNUM points out the following language from *Best Place:*

> Historically, the duty of good faith and fair dealing was implied in contracts with conditions of satisfaction, e.g., a contract for the painting of a portrait or for the supply of materials. However, every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement.

Def. Mem. in Supp. of Summ. Judg. at 20 *citing Best Place*, 82 Hawai'i at 123–24, 920 P.2d 334. The Hawaii Supreme Court also used similar language in describing the background of the insurer bad faith tort such as "[t]he obligation to deal in good faith is now a well-established principle of contract law ... every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." According to Defendant, this language confirms that this tort is similar to Mississippi's bad faith action that the Supreme Court held not saved from preemption in *Pilot Life*. There the Supreme Court noted that:

[a] common sense view of the word regulates insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry. Even though the Mississippi Supreme Court has identified its law of bad faith toward the insurance industry, the roots of this law are firmly planted in the general principle of Mississippi tort and contract law. Any breach of contract, and not merely an insurance contract, may lead to liability for punitive damages under Mississippi law.

*Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549. Thus, a significant factor in the Court's analysis was both the origin of the claim and the availability of the claim outside of the insurance context.

Plaintiff counters that *Ward* has radically refined this analysis when it rejected the defendant insurer's argument that the notice prejudice rule was itself evolved, like Mississippi's bad faith tort, from more general principles of law and thus did not "regulate insurance." [6] Specifically, the defendant argued that California's notice-prejudice rule merely was an industry-specific application of the general legal principle that "disproportionate forfeitures should be avoided in the enforcement of contracts." *Ward*, 526 U.S. at 378, 119 S.Ct. 1380. The Court rejected this argument by reasoning that:

> It is no doubt true that diverse California decisions bear out the maxim that "law abhors a forfeiture" and that the notice-prejudice rule is an application of that maxim. *But it is an application of a special order, a rule mandatory for insurance contracts, not a principle a*

---

**6.** The Court notes that *Ward* involved an application of a procedural rule in an ERISA action. The present action differs because it, like *Pilot Life,* involves a cause of action *outside* of ERISA. This distinction under relevant Ninth Circuit precedent proves to be critical. *Infra* Section A(1)(C) (discussing the application of *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988) and its progeny).

*court may pliably employ when the circumstances so warrant. Tellingly,* [defendant] *has identified no California authority outside of the insurance-specific notice-prejudice context indicating that as a matter of law, failure to abide by a contractual time condition does not work a forfeiture absent prejudice. Outside the notice-prejudice context, the burden of justifying a departure from a contract's written terms generally rests with the party seeking the departure.*

*Ward,* 526 U.S. at 370–71, 119 S.Ct. 1380 (emphasis added).

A synthesis of these two approaches indicates that the appropriate "common sense" test is whether the state law is applied outside of the insurance context.[7] The language in *Ward* clarifies sensibly that a cause of action or a rule is not disqualified from ERISA's saving clause merely because it has its origins in a general legal maxim.[8] Accordingly, the fact that Hawaii's *Best Place* tort has its origins in the general common law of tort and contract is not decisive. Instead, the Court focuses on whether Hawaii applies this tort outside of the insurance industry. As referenced above, the *Best Place* tort is not "necessarily" limited to insurance contracts, but by its very terms may be expanded to contexts outside of insurance. In the words of *Ward,* the Court finds that the *Best Place* principle is one that "a

court may pliably employ." *Ward,* 526 U.S. at 370–71, 119 S.Ct. 1380. Further, it appears to be happenstance that no Hawaii cases have applied this action outside of an insurance contract setting because as referenced above, the tort is expressly available against innkeepers, common carriers, lawyers and doctors.

Plaintiff's reliance upon *Francis v. Lee Enterprises, Inc.* is misplaced. 89 Hawai'i 234, 238 n. 2, 971 P.2d 707 (quoting *Best Place* that "the policy considerations surrounding the adoption of bad faith in insurance context are atypical and will not necessarily extend to all types of contracts"). The fact that the Hawaii Supreme Court refused to extend the tort action to an area it expressly did not reserve it for (namely the at-will employee-employer relationship) does not show that the tort may not be applied outside of the insurance context. Indeed, *Francis* is wholly consistent with *Best Place,* which specified where the tort action would lie. Moreover, the Court rejects Plaintiff's suggestion, as other federal courts have done, that *Ward* dramatically alters the rules announced in *Pilot Life. See, e.g., Jabour,* 162 F.Supp.2d at 1128 (holding that analysis of bad faith claims are unchanged by *Ward* ). Consequently, the Court finds that Hawaii's *Best Place* bad faith tort does not solely regulate insurance in the common sense view of the term and thus may not be distinguished from the Mississippi statute in *Pilot Life.*[9]

7. The Court notes that the third factor of the three McCarran–Ferguson Act factors asks whether the state law has been applied only to entities within the insurance industry. *Ward,* 526 U.S. at 359, 119 S.Ct. 1380. This analysis under the third factor is thus largely subsumed in the broader "common sense" inquiry. Accordingly, the Court will evaluate the third factor under the "common sense" inquiry.

8. Indeed, almost any conceivable common law rule fashioned by a court would be able to be reduced to some historical common law

maxim, which represent at their core notions of justice and fair play.

9. The Mississippi tort appears, per the Supreme Court in *Pilot Life,* to be a law of general application. The Court notes that the Hawaii tort action is dissimilar in that it is not a law of general application but rather aimed at a select few contractual relationships, namely those contracts made with an "innkeeper, a common carrier, a lawyer, a doctor or an insurer." *Best Place,* 82 Hawai'i at 123–24, 920 P.2d 334. The Court holds, however, that this distinction is not pivotal because the critical distinction is whether the

After evaluating the principal consideration of whether the state law regulates insurance from a common sense view of the circumstances, the Court is obliged to analyze the three McCarran–Ferguson Act factors to complement it inquiry. *Ward,* 526 U.S. at 373, 119 S.Ct. 1380. The Supreme Court instructs that these factors are to be viewed as "guideposts, not separate elements ... that must each be satisfied to save that State's law ...." *Id.* (citations omitted).

The first factor calls for the state law or regulation to have the effect of transferring or spreading a policyholder's risk. *Id.* at 374, 119 S.Ct. 1380. The Supreme Court's analysis in *Pilot Life* is instructive. There, the Supreme Court found that a similar bad faith tort action did not spread policy risk. 107 S.ct. at 1554; *Brandner,* 152 F.Supp.2d at 1226 n. 1 (noting that *Ward's* analysis did not reach this factor.). *But see Chamblin,* 168 F.Supp.2d at 1176 (holding that California's similar bad faith tort spreads policyholder risk). The Court observes, however, that the Hawaii Supreme Court evidently adopted this cause of action to heighten the duty of an insurer to investigate claims more thoroughly. *Best Place,* 82 Hawai'i at 127, 920 P.2d 334 (adopting the bad faith tort, in part, to provide "sufficient incentive to insurers to perform their obligations in good faith"); *but see Brandner,* 152 F.Supp.2d at 1226 (rejecting that bad faith tort met this factor because it is tenuous at best to assume that insurance companies will investigate claims more thoroughly because of a heightened good faith duty). The Court relies upon *Pilot Life*'s conclusion that tort actions such as Hawaii's do not spread policy risk. *See also Gilbert,* 276 F.3d at 1299 (relying on *Pilot Life* in holding that Alabama bad faith tort does not meet the first factor of the McCarran–Ferguson analysis). Accordingly, the Court finds that Hawaii's bad faith tort action does not spread policyholder risk.[10]

In evaluating the second factor a court considers whether the state law or regulation is an integral part of the policy relationship between the insurer and the insured. *Id.* In *Pilot Life,* the Supreme Court pronounced the following in considering the same issue:

> [t]he state common law of bad faith is no more "integral" to the insurer-insured relationship than any State's general contract law is integral to a contract made in that State ... Mississippi's law of bad faith, even if associated with the insurance industry, has developed from the general principles of tort and contract law available in any Mississippi breach of contract case.

*Pilot Life,* 481 U.S. at 51, 107 S.Ct. 1549. *But see Chamblin,* 168 F.Supp.2d at 1176 (distinguishing California's bad faith tort action integral because it establishes a consequential remedy for the insured in the event that the insurer breaches the contractual relationship in a very specific manner); *Lewis,* 78 F.Supp.2d at 1213 (distinguishing Oklahoma's bad faith tort because it changes the bargain between insured and insurer). Consequently, the Court finds that the *Best Place* bad faith tort is not integral to the insured-insurer relationship.

■ Thus, in compliance with considering the McCarran–Ferguson factors, Ha-

---

law regulates industries other than insurance. By its very terms, *Best Place* does.

**10.** The Court notes alternatively that its ultimate conclusion that the *Best Place* bad faith tort does not "regulate insurance" would be unchanged even if it considered the first factor of the McCarran–Ferguson analysis satisfied because the remaining analysis decisively weighs against it. Indeed, the Supreme Court instructs that these factors are guideposts that are not decisive.

waii's *Best Place* bad faith tort is law that impacts insurance, but does not solely regulate it. Therefore, Plaintiff's claim as stated arising under *Best Place* bad faith tort does not fit within ERISA's saving clause. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's claim for *Best Place* bad faith tort.

(C) Alternatively, Even if Hawaii's Bad Faith Tort Law Regulates Insurance Under ERISA's Saving Clause, Controlling Ninth Circuit Precedent Requires that a Bad Faith Claim be Barred.

 The Ninth Circuit has held that a plaintiff who brings a cause of action for bad faith against an insurer who denies benefits under an ERISA benefit plan essentially brings a cause of action for the improper processing of that claim, and is therefore preempted by ERISA. *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988). Unlike the notice-prejudice rule evaluated by the Supreme Court in *Ward*, Plaintiff's action involves a claim advanced outside of the remedial provisions of ERISA. *Kanne* addressed a similar claim when it considered whether a state law that regulated insurance for purposes of ERISA was preempted because it provided a right of action. The issue facing the Court in *Kanne* is similar to the issue presented in the case at bar, namely, does the conclusion that the state law falls within the saving clause end the preemption analysis. In other words, does the fact that a state law is "saved" mean that a party may sue under that state law. In *Kanne*, the plaintiff argued that because his claim was based upon a law "regulating insurance," he should be allowed to sue under it. *Id.* at 493–94. The Ninth Circuit rejected that proposition, observing that the plaintiffs asked that *Pilot Life*'s holding should be limited only to those state laws which do not fall within the

saving clause. *Id.* at 494. The Ninth Circuit relied on the following language in *Pilot Life:*

> In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress had rejected in ERISA.

*Id.* at 494 *citing Pilot Life*, 481 U.S. at 54, 107 S.Ct. 1549. The *Kanne* court concluded Congress intended § 502(a) of ERISA to be the exclusive instrument for ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits. *Id.* at 494.

The Ninth Circuit maintains this view even when the decision that state law may not provide a remedy leaves plaintiffs with no remedy at all. *Bast v. Prudential Ins. Co. of America*, 150 F.3d 1003, 1010 (9th Cir.1998). In *Bast*, the Ninth Circuit held that the plaintiff's state common law claims were preempted by ERISA even though there were no causes of action available under ERISA for a number of the state law claims the plaintiff alleged. Consequently, the state law claims were preempted by ERISA, barring any relief. The *Bast* court noted other courts have reached similar results. *Id. citing Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 943 (6th Cir.1995); *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1333 (5th Cir.1992); *Cannon v. Group Health Serv.*

*of Oklahoma, Inc.,* 77 F.3d 1270 (10th Cir. 1996).

Recently, the Ninth Circuit permitted a plaintiff to bring a state common law claim for invasion of privacy, holding it was not preempted by ERISA. *Dishman v. UNUM Life Ins. Co.,* 269 F.3d 974 (9th Cir.2001).[11] The court distinguished *Dishman* from *Bast* because the plaintiff's cause of action for invasion of privacy was not closely related enough to his claim for denial of benefits. *Id.* at 984. The court held that the conduct complained of had only a tenuous relationship to the benefit plan, so the plaintiff's claim was not preempted. It reiterated, however, that state law claims are preempted where they would offer "an alternative enforcement mechanism" to ERISA. *Id.* at 983 *citing New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

In the case at bar, Plaintiff's claim for the *Best Place* bad faith tort by UNUM is inextricably intertwined with his claim for benefits and therefore related to the benefit plan, which Plaintiff concedes is an ERISA plan. This court holds that controlling precedent mandates that Plaintiff's claim is related to the processing of a claim and is preempted by ERISA because ERISA's civil remedy is Plaintiff's sole avenue of relief. Even if the *Best Place* bad faith tort was law that could be considered as solely regulating insurance, Plaintiff would not be allowed to sue under it. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's claim for a *Best Place* bad faith tort because it finds, under binding Ninth

Circuit precedent, that ERISA is Plaintiff's sole avenue of relief.

**3. Application of Legal Standard to Plaintiff's Remaining State Law Claims**

■ By contrast, Plaintiff's breach of contract and unfair and deceptive trade practices are obviously preempted under ERISA. It is axiomatic that breach of contract claims are not specifically directed at insurance companies. Similarly, Plaintiff's claim for deceptive trade practices is a statutory cause of action that by its very terms is not specifically directed at insurance companies. Haw.Rev.Stat. § 480–2 (declaring unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce"). The Court also notes that Plaintiff offers no defense to these claims as they relate to UNUM's Plan IV. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's claims for breach of contract and deceptive trade practices.

**4. Plaintiff's Prayer for Extra–Contractual Damages**

■ Plaintiff's prayer for relief requests extra-contractual, compensatory and punitive damages. Defendant correctly points out that these damages are not available under ERISA. *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Bast,* 150 F.3d at 1009. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's request for extra-contractual, compensatory and punitive damages.

---

**11.** The Court notes that this is the only Ninth Circuit decision post-*Ward* addressing the applicability of ERISA's saving clause, and that

no reference was made to *Ward* in that opinion; presumably because *Ward* was unnecessary for the Ninth Circuit's decision.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for partial summary judgment.

IT IS SO ORDERED.