**AIU INSURANCE COMPANY, et al.**

**v.**

**SUPERINTENDENT OF INSURANCE.**

Supreme Judicial Court of Maine.

Argued June 20, 1991.

Decided Dec. 31, 1991.

David O. Bickart (orally), Kaye, Scholer, Fierman, Hays & Handler, Washington, D.C., Paul F. Macri, Berman, Simmons & Goldberg, P.A., Lewiston, for plaintiffs.

Michael E. Carpenter, Atty. Gen., William R. Stokes (orally), Linda M. Pistner, Robert A. Wake, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY *, JJ.

ROBERTS, Justice.

AIU Insurance Company, American Fidelity Company, American Home Assurance Company, Birmingham Fire Insurance Company of Pennsylvania, Commerce and Industry Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Indemnity Company, Inc. and New Hampshire Insurance Company (the Insurers) appeal a summary judgment of the Superior Court (Cumberland County, *Perkins, J.*) in favor of the Superintendent of the Bureau of Insurance in an action to recover damages resulting from an allegedly confiscatory statutory rate rollback. Because we agree with the Superintendent's contention that the Insurers' action is barred by *res judicata*, we affirm the judgment of the Superior Court.

* Brody, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

## I.

The Insurers in the instant case are a group of companies that for many years wrote workers' compensation insurance in Maine. Throughout this period they were members of the National Council on Compensation Insurance (NCCI), a rating organization licensed to file rate applications on their behalf pursuant to 24–A M.R.S.A. § 2310 (1990). By the early to mid–1980's there was something of a crisis in the workers' compensation insurance industry, with consumers claiming that rates were unjustifiably high and companies claiming they were unable to earn a fair rate of return on the state approved rates they were charging. *See National Council on Compensation Ins. v. Superintendent of Ins.*, 481 A.2d 775 (Me.1984) (*NCCI 1*). In response to these problems, the Legislature passed the Workers' Compensation System Competitive Rating Act, P.L.1985, ch. 7372 (hereinafter the 1985 Act). This Act mandated significant reductions in both benefits and premiums as of August 1, 1985. It remained in effect until November of 1987, when it was repealed by the Legislature.

One immediate effect of the 1985 Act was to enforce a reduction of all workers' compensation rates then in effect by at least 8% from the rates that had been in effect on January 1, 1985. This rate rollback was to run through the end of 1986, after which insurers were forbidden to raise their rates by more than 10% in any given year. Thereafter, the Superintendent issued interim and final orders reducing the rates of all workers' compensation carriers by the minimum 8%. NCCI sought injunctive relief, claiming that its members would lose approximately one hundred million dollars "[i]f Defendant's Order to reduce rates by 8% is made effective for the one year period beginning August 1, 1985." NCCI argued that if the act were to take effect, the return on equity would thus be "confiscatory" in the constitutional sense.

The 1985 Act also required the Superintendent to adopt a plan governing the assignment of residual market policies to insurance companies participating in the voluntary market. The residual market consisted of employers that, for reasons such as non-payment of premiums or unacceptably high accident rate, would normally not be within the group to whom the insurers would offer their product. Under the plan approved by the Superintendent, carriers with over 1% of the market in Maine acted as servicing carriers for these residual market policies and were responsible for administering the policies and claims arising under them in return for a percentage of the premiums. The plan also required all carriers to share in losses generated by the residual market policies according to a formula adopted by the Superintendent.

NCCI challenged this order as well and the Superior Court resolved the challenges in an opinion and order dated May 14, 1987. That opinion upheld the Act's constitutionality against NCCI's "general constitutional challenge" and denied injunctive relief. NCCI then appealed to this Court. Ten days after oral argument, however, the Legislature enacted P.L.1987, chs. 559–560, which repealed the 1985 Act and substantially revised both the rate setting and benefit provisions of the Workers' Compensation Act. After further briefing and argument on the issue of mootness, we dismissed NCCI's appeal as moot on March 4, 1988. *National Council on Compensation Ins. v. Superintendent of Ins.*, 538 A.2d 759 (Me.1988) (*NCCI 2*). In the wake of the Superior Court's ruling, the Insurers had petitioned to withdraw from the workers' compensation market in Maine. The Insurers' petitions were granted prompt approval and they ultimately withdrew on December 31, 1987.

On July 26, 1989, the Insurers initiated the present action against the Superintendent in his official capacity, seeking damages under the federal and state constitutions on the ground that the statutory scheme imposed by the Legislature and enforced by the Superintendent was "confiscatory" and amounted to a "taking of ... property without payment of just compensation." After filing his answer, the Superintendent moved to dismiss the complaint or, in the alternative, for summary judgment on a variety of grounds including

sovereign immunity, res judicata, statute of limitations and equitable estoppel as well as failure to state a claim on which relief could be granted. On January 2, 1991, the Superior Court entered judgment against the Insurers on the ground that they had failed to demonstrate a "taking under the 'takings clause' of the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, section 6–A of the Maine Constitution." The Insurers filed a timely notice of appeal and the Superintendent cross-appealed, challenging adverse rulings contained in the decision and order.

## II.

 In the instant case it is uncontested that the Insurers are in privity with the National Council on Compensation Insurance with respect to the litigation in *NCCI 2*. Nevertheless, the Insurers make essentially the same argument for damages as that made in *NCCI 2*. The only difference between the two cases is the type of relief requested. In *NCCI 2* the Insurers sought injunctive and declaratory relief. In this case the Insurers request damages for the period of time during which the rates had been rolled back by the contested statute. In response to the Superintendent's contention that this case is barred by the doctrine of *res judicata*, the Insurers argue that their claim could not have been litigated in the prior proceeding because "[w]hen *NCCI 2* was originally filed in 1985, appellants had not yet suffered any damages."

A party must assert all claims arising from a cause of action in a single claim. In *Currier v. Cyr*, 570 A.2d 1205 (Me.1990), we held that:

> the doctrine of res judicata bars the relitigation in a present action of all issues that were tried, *or may have been tried*, in a prior action if: (1) the same parties or their privies were involved in both actions; (2) a valid final judgment was entered in the prior action; (3) the matters present for decision now were, or

might have been, litigated in the prior action.

*Id.* at 1208 (emphasis added). In this case, the same parties were involved in both actions and a final judgment was entered in the prior action. Assuming, without deciding, that a cause of action existed, the only issue remaining is whether the damages currently at issue existed at the time of *NCCI 2* and "might have been" litigated at that time. *Id.*

It is in the nature of risk pooling that it is not possible to predict whether a particular insurance policy and premium will produce a return for the insurer. Premiums are established on the basis of actuarial forecasts that predict a net return on all policies issued by a particular insurer or group of insurers. If, as the Insurers allege, their premiums were actuarially determined to be confiscatory from the date of the issuance of their policies, they were damaged at that moment.[1] Contrary to the opinion of the Superior Court, damages based on allegedly confiscatory rates, if recoverable at all, would not depend on the Insurers' paying out claims under policies issued at the reduced rate. The consolidated complaints of *NCCI 2* did not go to trial in the Superior Court until more than one year after the Insurers began writing policies under the contested rate schedule. The Insurers, having issued numerous policies at the lower rates by that time, had allegedly sustained damages prior to trial in that action. Their failure to seek damages in *NCCI 2* bars them from raising such a claim in the instant case.

 The Insurers also assert that, although an association like NCCI may sue for injunctive or declaratory relief, it has no authority to bring damage claims on behalf of individual members unless the individuals themselves join as parties. Though this argument is partially correct, we find that it is unavailing in this case. The Supreme Court did hold in *Warth v. Seldin*, 422 U.S. 490, 515–16, 95 S.Ct. 2197, 2214, 45 L.Ed.2d 343 (1975), that an associ-

---

**1.** Examination of the history of this litigation indicates that the insurers were sufficiently aware of the potential for damages to assert in their original complaint in 1985 that they would lose somewhere between $99,000,000 and $107,-000,000 in the first year of the rate rollback.

ation cannot sue for damages on behalf of its members unless the injured parties are made actual parties to the suit. Nevertheless, the Insurers make no showing that they could not have intervened in the case or that they were in any way prevented from asserting their rights to monetary damages at the time.

Finally, the Insurers must rely on their participation in *NCCI 2* to avoid finding their claims barred by the doctrine of administrative res judicata. Had the Insurers permitted the administrative proceedings to become final without seeking judicial review pursuant to 5 M.R.S.A. § 11002 (1989), they would not have been permitted to then seek an award of damages based on allegedly confiscatory rates. *See Maines v. Secretary of State,* 493 A.2d 326 (Me.), *cert. denied,* 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 291 (1985). Although we do not address the ground on which the Superior Court granted a summary judgment in favor of the Superintendent, we affirm that judgment on the ground of *res judicata,* which was raised and fully litigated in the trial court.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and COLLINS concur.