2003 OK 90

**Rod HOLLAWAY, M.D., an individual, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

No. 98,120.

Supreme Court of Oklahoma.

Oct. 28, 2003.

As Corrected Oct. 31, 2003.

Rehearing Denied April 15, 2004.

**1024**

Joseph F. Clark, Jr., Joseph F. Bufogle, Tulsa, OK, for Plaintiff.

Patrick M. Ryan, Phillip G. Whaley, Joe M. Hampton, Amy J. Pierce, Oklahoma City, OK, for Defendant.

KAUGER, J.:

¶ 1 As originally certified, the question certified provides:

Does Oklahoma's cause of action for breach of the implied covenant of good faith and fair dealing allowing for recovery of consequential and (when appropriate) punitive damages, as adopted in *Christian v. American Home Assurance Co.*, 1977 OK 141, 577 P.2d 899, apply only to contracts of insurance such that it can be said to "regulate insurance" as that term is used in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 [107 S.Ct. 1549, 95 L.Ed.2d 39] (1987) and *Unum Life Ins. Co. of America v. Ward*, 527 [526] U.S. 358 [119 S.Ct. 1380, 143 L.Ed.2d 462] (1999) (requiring that to "regulate insurance" a regulation must, as a matter of common sense, "home [ ] in on the insurance industry and [ ] not

just have an impact on that industry"). If Oklahoma's cause of action for the breach of the implied obligation of good faith and fair dealing "regulates insurance," it avoids preemption pursuant to ERISA's saving clause under *UNUM* and *Lewis v. Aetna U.S. Healthcare, Inc.*, 78 F.Supp.2d 1202 (N.D.Okla.1999). If it does not "regulate insurance," the cause of action is no longer available in the ERISA context and *Lewis* is no longer good law.

¶ 2 In *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003), the United States Supreme Court set forth a new and different test for determining when a law regulates insurance under 29 U.S.C. § 1144(b)(2) [1] to avoid federal preemption. Because the *Miller* opinion alters the test in causes previously considered by the Tenth Circuit and because pursuant to 20 O.S.2001 § 1602,[2] this Court has authority to answer any question which may be determinative of an issue in the cause, we answer a single question, as reformulated: [3]

whether Oklahoma's cause of action for breach of the implied covenant of good faith and fair dealing is a "law which regulates insurance" within the mean of 29 U.S.C. § 1144(b)(2)(A) and as that term is defined by *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003)?

¶ 3 Pursuant to *Miller*, a law which substantially affects the risk pooling arrange-

1. Title 29 U.S.C. § 1144 provides in pertinent part:

"(a) Supersedure; effective date

(1) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

(b) Construction and application

... (2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities...."

2. Title 20 O.S.2001 § 1602 provides:

"Power to Answer. The Supreme Court and the Court of Criminal Appeals may answer a

question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state."

3. Following certification, the United States Supreme Court promulgated its decision in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003) which established a new test for the regulation of insurance in the ERISA context. Both parties have addressed the impact of *Miller* on the certified question in filings with this Court. Therefore, the question has been reformulated pursuant to 20 O.S.2001 § 1602.1.

ment between the insurer and the insured and which is specifically directed toward the insurance industry avoids the general rule of preemption under the Employee Retirement Income Security Act of 1974 (ERISA).[4] Because Oklahoma's cause of action for bad faith breach of an insurance contract does not substantially affect the risk-pooling arrangement between insurers and insureds,[5] it does not meet the test established in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003) as a law which regulates insurance under 29 U.S.C. § 1144(b)(2).[6]

## FACTS

¶ 4 The plaintiff, Rod Hollaway, M.D. (Hollaway/insured), filed suit in the District Court of Tulsa to recover benefits funded through a group long term disability insurance policy issued by the defendant, UNUM Life Insurance Company of America (UNUM/insurer), to Hollaway's former employer. Hollaway also asserted a claim for bad faith breach of the implied covenant of good faith and fair dealing seeking consequential and punitive damages. Subsequently, the cause was removed to federal court.

¶ 5 It is undisputed that the insurance benefits arise out of and are related to an employee welfare benefit plan governed exclusively by ERISA. It is also agreed that any claim for benefits is preempted by ERISA and is governed by federal law. Nevertheless, Hollaway claims that Oklahoma's common law cause of action for bad faith breach of an insurance contract is exempted from ERISA preemption as a state law which "regulates insurance" under 29 U.S.C. § 1144(b)(2).[7]

¶ 6 Recognizing that state law is determinative of the preemption issue on the bad

---

**4.** ERISA, like the provisions of the Federal Railroad Safety Act of 1970, recently considered in *Hightower v. Kansas City Southern Railway Co.*, 2003 OK 45, 70 P.3d 835, contains an express provision governing preemption of state law claims and a savings provision relating to some state laws. In *Hightower*, this note, supra, we determined state law regulations relating to excessive speed and tort claims warnings did not survive under the savings clause. See, 29 U.S.C. § 1144, note 1, supra.

**5.** The dissent charges that the majority has failed to garner a passing mark in Federalism 101—at the same time conceding that the answer provided to the question certified is correct. [¶ 1 of the dissenting opinion provides in pertinent part: "... Even though I do not dispute the soundness of the court's legal counsel to the certifying tribunal, I cannot countenance today's incursion into the orbit of exclusive federal forensic competence ..."] Furthermore, the minority writing indicates that the opinion rendered can be nothing other than advisory. The allegation stems from an argument that we somehow have moved into the realm of providing "advice" to the federal court. The charge is interesting in light of an opinion recently released by the Court for publication.

In *Delk v. Markel American Insurance Co.*, 2003 OK 88, 81 P.3d 629, 2003 WL 22390053, we were asked to answer a certified question of law from the United States District Court. *Delk* determined that an insured cotenant who occupies the insured property as her home and who has insured the property for its full value may recover insurance benefits greater than the value of a fractional legal interest in the property. In so doing, the majority found it "our task to provide the federal court with a range of scenarios, if any, that would militate in favor of or against recovery."

The difference between *Delk* and the situation here is that we make no attempt to provide any advice to the certifying court on what scenarios might render an insured the ability to recoup against an insurer. Rather, we answer a pure question of law, applying Oklahoma law to the standards enunciated by the United States Supreme Court in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, see note 3, supra, to determine whether this State's law is one which regulates insurance under 29 U.S.C. § 1144(b)(2). See note 1, supra. We do not hypothecate on whether Oklahoma's law of bad faith meets the second prong of the test established in *Kentucky*—a resolution of which might well be considered extrajudicial in that the Supreme Court has made it clear that both prongs must be satisfied to avoid preemption.

**6.** Title 29 U.S.C. § 1144(b)(2), see note 1, supra. The cause differs significantly from *McDermott v. Sentry Life Ins. Co., Inc.*, 2000 OK CIV APP 115, ¶ 10, 15 P.3d 508 (2001) in which the Court of Civil Appeals determined, in an opinion released for publication by that court, that a non-participant who was challenging conduct of an insurer did not implicate the relationship of traditional ERISA entities thus not implicating the preemption provisions of the federal law. Here, the plaintiff is an insured under the policy. Opinions released for publication by order of the Court of Civil Appeals, are persuasive only, and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1.

**7.** Title 29 U.S.C. § 1144(b)(2), see note 1, supra.

faith cause of action and that this Court has not addressed the precise issue presented, the federal court certified the question to this Court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.2001 § 1601 *et seq.* on August 9, 2002. We set a briefing cycle which was completed on October 21, 2002.

¶ 7 On February 25th and 28th, 2003, respectively, Hollaway and UNUM filed a notice and response to recent authority following the Tenth Circuit's decision in *Conover v. Aetna U.S. Health Care, Inc.*, 320 F.3d 1076, 1080 (10th Cir.2003). In *Conover*, the federal court held that Oklahoma's bad faith law did not "regulate insurance" within the meaning of ERISA's savings clause and was thus preempted both because it related to an ERISA employment benefit plan and because it conflicted with the federal statute's civil enforcement scheme. On April 2, 2003, the United States Supreme Court decided *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003), in which it established a new test for determining whether a state law "regulates insurance" and whether it is removed from the general rule of ERISA preemption under the savings clause; 29 U.S.C. § 1144(b)(2).[8] Hollaway and UNUM addressed the *Miller* opinion in filings on April 10th and April 14th, 2003, respectively.

## I.

¶ 8 **THE TEST FOR ERISA PREEMPTION ALTERED WITH THE SUPREME COURT'S DECISION IN *Kentucky Ass'n of Health Plans, Inc. v. Miller*, MAKING ANY PREVIOUSLY PROMULGATED TENTH CIRCUIT DECISIONS OF LITTLE ASSISTANCE. UNDER THE AUTHORITY OF 20 O.S.2001 § 1602, WE ANSWER A QUESTION WHICH MAY BE DETERMINATIVE OF AN ISSUE IN THE CAUSE.**

■ ¶ 9 The federal court recognized that Oklahoma law would govern the preemption issue. It certified the preemption question over the objections of the insurer. UNUM urges us to refrain from answering the certified question. The insurer opposed certification in the federal court on grounds that federal case law was determinative of the preemption issue and that any resolution we might provide to the dispute would not be determinative of a material issue in the cause. Although the answer to the question certified may not resolve the cause, we answer because no Oklahoma law exists on a determinative issue and because tests applied by the Tenth Circuit have been altered by a recent Supreme Court decision.

¶ 10 Pursuant to 20 O.S.2001 § 1602,[9] this Court has the power to answer certified questions from federal courts, appellate courts of other states, federally recognized Indian tribes, and governmental entities of Canada and Mexico. Questions may be answered if our response may be determinative of an issue in the pending litigation and there is no controlling precedent established through judicial opinion, constitutional provision or legislative enactment.

¶ 11 UNUM objected to certification on grounds that under the Supreme Court's decision in *Rush Prudential HMO, Inc.* v. *Moran*, 536 U.S. 355, 122 S.Ct. 2151, 2165, 153 L.E.2d 375 (2002), a decision by this Court on the issue of preemption would not be determinative of a material issue in the cause. In *Rush*, the Supreme Court determined that state-law based pleas for damages not provided for under the ERISA scheme were preempted. UNUM argued that, even if we were to hold that Oklahoma's cause of action for bad faith breach of the covenant of good faith and fair dealing regulated insurance within the meaning of 29 U.S.C. § 1144(b)(2)(A),[10] ultimately ERISA would foreclose the possibility of an award of consequential or punitive damages as remedies foreclosed by the federal statute's remedy provision.[11]

¶ 12 The federal court was unconvinced that *Rush* was dispositive of the issue certi-

---

**8.** *Id.*

**9.** Title 20 O.S.2001 § 1602, see note 2, supra.

**10.** See, 29 U.S.C. § 1144(b)(2)(A), note 1, supra.

**11.** Various penalties for delay in payment are provided in 29 U.S.C. § 1132(a), none of which include the award of punitive damages.

fied—whether Oklahoma's law of bad faith breach of the covenant of good faith and fair dealing "regulates insurance" within the mean of ERISA. In dismissing UNUM's argument on this point, it cited to specific language from *UNUM* providing:

"Although we have yet to encounter a forced choice between the congressional policies of exclusively federal remedies and the 'reservation of the business of insurance to the States,' ... we have anticipated such a conflict, with the state insurance regulation losing out if it allows plan participants 'to obtain remedies ... that Congress rejected in ERISA ...' " [Citations to authority omitted.]

■ ¶ 13 Apparently, the federal court was convinced that although the insured might not ultimately prevail, it remained in need of direction on state law relating to a material issue—whether Oklahoma's law of bad faith regulates insurance within the meaning of 29 U.S.C. § 1144(b)(2)(A).[12] Title 20 O.S.2001 § 1602,[13] does not foreclose an answer to a question simply because this Court's response may not be dispositive of the cause. All the statute requires for us to proffer an answer to a certified question is that the response be determinative of a single issue in the cause and that no controlling state law exist.

¶ 14 The Tenth Circuit has on three occasions addressed the issue of whether state-law bad faith claims were laws regulating insurance and thus avoiding preemption under 29 U.S.C. § 1144(b)(2)(A). In a case decided before certification, *Moffett v. Halliburton Energy Serv., Inc.,* 291 F.3d 1227, 1232 (10th Cir.2002), the federal court determined that Wyoming's tort of insurance bad faith did not "regulate insurance" within the meaning of ERISA's savings clause preemption provision. The decision in *Conover v. Aetna U.S. Health Care, Inc.,* 320 F.3d 1076, 1078 (10th Cir.2003) was promulgated after certification and reaffirmed the appellate court's earlier holding in *Gaylor v. John Hancock Mutual Life Ins. Co.,* 112 F.3d 460, 465–66 (10th Cir.1997) that Oklahoma's bad faith law did not regulate insurance within the meaning of ERISA's savings clause preemption provision.[14]

■ ¶ 15 Although the trial court here might normally consider itself bound by the Tenth Circuit's pronouncement in *Conover* concerning the state of Oklahoma's bad faith cause of action,[15] we are not so constrained. By virtue of the Supremacy Clause, we are governed by the decisions of the United States Supreme Court with respect to the federal constitution and federal law, and we must pronounce rules of law that conform to extant Supreme Court jurisprudence.[16] Nevertheless, nothing in the concept of supremacy or in any other principle of law requires subordination of state courts to the inferior federal courts.[17] Subject to decisions of the United States Supreme Court, we are free to promulgate judicial decisions grounded in our own interpretation of federal law.[18] Where no Supreme Court directive exists, federal law is merely instructive in providing guidance on state law questions.[19]

**12.** This cause differs significantly from *Cray v. Deloitte Haskins & Sells,* 1996 OK 102, 925 P.2d 60, in which we declined to answer a certified question. The *Cray* Court refused to consider the question certified because the question certified was answered by a ruling on the issue by the certifying court. Here, the federal court has not entered judgment on the preemption issue.

**13.** Title 20 O.S.2001 § 1602, see note 2, supra.

**14.** In *Conover v. Aetna U.S. Health Care, Inc.,* 320 F.3d 1076, 1078 (10th Cir.2003), the Tenth Circuit affirmed a federal district court which specifically rejected the position taken by its sister court in *Lewis v. Aetna U.S. Healthcare, Inc.,* 78 F.Supp.2d 1202, 1208 (N.D.Okla.1999), holding that Oklahoma's law of bad faith was applicable only in the insurance context and thus met the requirement of regulating insurance avoiding ERISA preemption.

**15.** See, *Conover v. Aetna U.S. Health Care, Inc.,* note 14, supra.

**16.** *Bogart v. CapRock Communications Corp.,* 2003 OK 38, ¶ 13, 69 P.3d 266; *Akin v. Missouri Pacific Railroad Co.,* 1998 OK 102, ¶ 30, 977 P.2d 1040; *United States v. Home Fed. S. & L. Ass'n of Tulsa,* 1966 OK 135, ¶ 18, 418 P.2d 319.

**17.** *Bogart v. CapRock Communications Corp.,* see note 16, supra; *Akin v. Missouri Pacific Railroad Co.,* see note 16, supra.

**18.** *Id.*

**19.** See, *Hathaway v. State ex rel. Medical Research & Technical Auth.,* 2002 OK 53, ¶ 13, 49 P.3d 740; *Payne v. Dewitt,* 1999 OK 93, ¶ 8, 995 P.2d 1088; *McDaneld v. Lynn Hickey Dodge, Inc.,*

¶ 16 Further, with the Supreme Court's recent pronouncement in *Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003), which established a new test for the regulation of insurance determination under ERISA, it is questionable whether the trial court here would determine that it must follow *Conover* as controlling precedent. In *Conover,* the Tenth Circuit applied a test to determine whether Oklahoma's bad faith cause of action was a law regulating insurance within the meaning of ERISA's savings clause developed out of the McCarran–Ferguson Act requiring the consideration of three factors: 1) whether the practice has the effect of transferring or spreading a policyholder's risk; 2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and 3) whether the practice is limited to entities within the insurance industry.

¶ 17 The United States Supreme Court decided *Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003) specifically rejecting the test applied by the Tenth Circuit in *Conover.* The Supreme Court stated in *Miller:*

"... We believe that our use of the McCarran–Ferguson case law in the ERISA context has misdirected attention, failed to provide clear guidance to lower federal courts, and, as this case demonstrates, added little to the relevant analysis....

... Today, we make a clean break from the McCarran–Ferguson factors and hold that for a state law to be deemed a 'law ... which regulates insurance' under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance.... Second, as explained above, the state law must substantially affect the risk pooling arrangement between the insurer and the insured...." [Citations omitted.]

1999 OK 30, ¶ 7, 979 P.2d 252; *Gaylord Entertainment Co. v. Thompson,* 1998 OK 30, ¶ 21, 958 P.2d 128.

It is with the Supreme Court's pronouncement in mind that we have reformulated the certified question. In answering the question, we will apply the test mandated by the high court in *Miller.*

## II.

¶ 18 OKLAHOMA'S CAUSE OF ACTION FOR THE BAD FAITH BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING DOES NOT AFFECT THE RISK POOLING ARRANGEMENT BETWEEN INSURERS AND INSUREDS SO AS TO AVOID ERISA PREEMPTION PURSUANT TO 29 U.S.C. § 1144(b)(2) AND THE SUPREME COURT'S PRONOUNCEMENT IN *Kentucky Ass'n of Health Plans, Inc. v. Miller.*

■ ¶ 19 Hollaway argues that Oklahoma's cause of action for bad faith breach of the covenant of good faith and fair dealing meets the two-part *Miller* test and is exempted from ERISA preemption. He asserts that actions based on a breach of the covenant of good faith and fair dealing affect the risk pooling arrangement between insurers and their insureds and that they are specifically directed towards the insurance industry. UNUM disagrees with both these contentions.

■ ¶ 20 Under *Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003), a state law must meet both prongs [20] of a two-step test to avoid federal preemption under ERISA and to fall within the savings provision, 29 U.S.C. § 1144(b)(2).[21] The state law must: 1) substantially affect the risk pooling arrangement between the insurer and the insured; and 2) be specifically directed toward the insurance industry. In *Miller,* the Supreme Court determined that Kentucky's statutory provisions of its health care act, which were directed at all willing providers, met the test and were saved from preemption. The laws met the first test of risk

**20.** *Kentucky Ass'n of Health Plans, Inc. v. Miller,* see note 3, supra, and quotation from the opinion in ¶ 17, supra.

**21.** Title 29 U.S.C. § 1144(b)(2), see note 1, supra.

pooling by altering the permissible bargains between insurers and insureds and the second through their application only to potential health care providers.

■ ¶ 21 "Risk" within the meaning of the insurance industry and as it relates to the insurer-insured relationship involves the event or happening for which the insurance company has specifically contracted to reimburse its insured—the actual risk transferred from the insured to the insurer.[22] It is the risk of injury for which the insurance company contractually agrees to compensate the insured.[23]

■ ¶ 22 Risk pooling is an essential characteristic of the insurance industry.[24] It serves as a form of diversification that reduces the dispersion or volatility of losses.[25] Risk pooling is the practice of pooling those with greater and lesser risks together to better account and minimize the unpredictable risk for everyone.[26] Risk pooling results in spreading the costs of risk of loss for which an insurer must pay across the span of insureds. The theory of risk pooling is that it is not possible to predict whether a partic-ular insurance policy and premium will produce a return for the insurer. Premiums are established on the basis of actuarial forecasts that predict a net return on all policies by a particular insurer or group of insurers.[27]

¶ 23 The Supreme Court has previously determined that although bad faith actions may concern the policy relationship between the insurer and insured, they do not effect a spreading of policyholder risk.[28] Research reveals nine cases [29] which have applied the new *Miller* test to bad faith breach of contract actions. All nine of these decisions provide that state law bad faith claims are preempted and do not fall within ERISA's savings provision.[30] Two of the nine courts specifically found that causes of action for bad faith—which provide for extra-contractual damages—do not substantially affect the risk pooling arrangement between the insurer and the insured within the meaning of *Miller*.[31] The determination that state law bad faith causes of action do not effect a spreading of risk in the risk pooling sense conforms with the cases predating *Miller* in which courts addressed the risk allocation issue.[32]

22. *Cramer v. Association Life Ins. Co.*, see note 36, infra.

23. *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 130, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982); *Community Health Partners, Inc. v. Commonwealth of Kentucky*, 14 F.Supp.2d 991, 1002 (W.D.Ky.1998), *aff'd*, 230 F.3d 1357 (6th Cir. 2000), *cert. denied*, 538 U.S. 960, 123 S.Ct. 1779, 155 L.Ed.2d 511 (2003).

24. *Securities & Exchange Comm'n v. Life Partners, Inc.*, 318 U.S.App.D.C. 302, 87 F.3d 536–541 (1996), *rehearing denied*, 322 U.S.App.D.C. 189, 102 F.3d 587 (1996); *Delta Holdings, Inc. v. National Distillers & Chemical Corp.*, 945 F.2d 1226 (2nd Cir.1991), *cert. denied*, 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 390 (1992).

25. *Delta Holdings, Inc. v. National Distillers & Chemical Corp.*, see note 24, supra.

26. *WR Enterprises, Inc. v. Department of Labor & Industries*, 147 Wash.2d 213, 53 P.3d 504, 510 (2002).

27. *AIU Ins. Co. v. Superintendent of Ins.*, 600 A.2d 1115, 1117 (Me.1991), *cert. denied*, 504 U.S. 986, 112 S.Ct. 2967, 119 L.Ed.2d 587 (1992), *rehearing denied*, 505 U.S. 1238, 113 S.Ct. 9, 120 L.Ed.2d 937 (1992).

28. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987).

29. *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1146 (9th Cir.2003); *Chapman v. Prudential Life Ins. Co. of America*, 267 F.Supp.2d 569, 580 (E.D.La.2003); *Revells v. Metropolitan Life Ins. Co.*, 261 F.Supp.2d 1359 (M.D.Ala.2003); *McGuigan v. Reliance Standard Life Ins. Co.*, 256 F.Supp.2d 345 (E.D.Pa.2003); *Leuthner v. Blue Cross & Blue Shield of Northeastern Pennsylvania*, 270 F.Supp.2d 584 (M.D.Pa.2003); *Bank of Louisiana v. Aetna United States Healthcare, Inc.*, 2003 WL 21634306 (E.D.La.2003, slip opinion); *Anderson v. Business Men's Assurance Co.*, 2003 WL 21305335 (E.D.La.2003, slip opinion); *Sundown Ranch, Inc. v. John Alden Life Ins. Co.*, 2003 WL 21281642 (N.D.Tex.2003, slip opinion); *Ercole v. Conectiv & Coventry Health Care of Delaware, Inc.*, 2003 WL 21104926 (D.Del.2003, slip opinion). But see, *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444 (6th Cir.2003) [Breach of contract claims remanded for consideration to allow claims unrelated to the insurance plan.].

30. Title 29 U.S.C. § 1144(b)(2), see note 1, supra.

31. *McGuigan v. Reliance Standard Life Ins. Co.*, see note 29, supra; *Ercole v. Conectiv & Coventry Health Care of Delaware, Inc.*, see note 29, supra.

32. *Cramer v. Association Life Ins. Co.*, see note 36, infra; *Morris v. Highmark Life Ins. Co.*, see note 36, infra; *Erwin v. Texas Health Choice*, see note 36, infra; *Little v. UNUMProvident Corp.*,

¶ 24 The tort of bad faith breach of an insurance contract is not a risk identified within insurance policies as a risk of loss the insurer agrees to bear on behalf of the insured.[33] The fact that the existence of the tort may compel insurance companies to investigate an insured's claims more thoroughly does not result in increased costs which may automatically be passed on to the insured.[34] There is no indication that the law of bad faith was intended to result in the sharing of risk as to any form of medical care.[35] Although the tort of bad faith may well have affected insurance rates to the extent that it has placed an additional burden on insurers to act in good faith to avoid increased awards, the insured has not demonstrated that it is a "risk of loss" included in risk pooling formulas used by insurers to determine premiums for losses insured against.

¶ 25 We align ourselves with the jurisdictions which have applied the *Miller* test determining that state-law based bad faith claims are preempted under ERISA. Further, we note that the overwhelming majority of pre-*Miller* decisions considering the bad faith issue also determine the claims are subject to ERISA preemption.[36] We hold

see note 33, infra; *Brandner v. Unum Life Ins. Co.*, see note 36, infra; *Pomeroy v. Johns Hopkins Medical Servs., Inc.*, see note 36, infra; *Camire v. Aetna Life Ins. Co., Inc.*, see note 36, infra; *Ferry v. Mutual Life Ins. Co.*, see note 36, infra.

**33.** *Little v. UNUMProvident Corp.*, 196 F.Supp.2d 659, 668 (S.D.Ohio 2002).

**34.** *Brandner v. Unum Life Ins. Co.*, see note 36, infra.

**35.** *Morris v. Highmark Life Ins. Co.*, see note 36, infra.

**36.** Title 29 U.S.C. § 1144(b)(2), see note 1, supra. See, *Pilot Life Ins. Co. v. Dedeaux*, see note 28, supra; *Howard v. Coventry Health Care of Iowa, Inc.*, 293 F.3d 442 (8th Cir.2002); *Walker v. Southern Co. Serv., Inc.*, 279 F.3d 1289, (11th Cir.2002), *rehearing en banc denied*, 34 Fed. Appx. 393, —— F.3d —— (11th Cir.2002), *cert. denied*, 537 U.S. 824, 123 S.Ct. 111, 154 L.Ed.2d 34 (2002); *Conover v. Aetna U.S. Health Care, Inc.*, see note 14, supra; *Moffett v. Halliburton Energy Serv., Inc.*, 291 F.3d 1227, 1235 (10th Cir.); *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999); *Bast v. Prudential Ins. Co.*, 150 F.3d 1003, 1007 (9th Cir.1998), *cert. denied*, 528 U.S. 870, 120 S.Ct. 170, 145 L.Ed.2d 144 (1999); *Custer v. Pan American Life Ins.* Co., 12 F.3d 410, 418 (4th Cir.1993); *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 818 (9th Cir. 1992); *Swerhun v. Guardian Life Ins. Co. of America*, 979 F.2d 195 (11th Cir.1992); *Hogan v. Kraft Foods*, 969 F.2d 142, 144 (5th Cir.1992); *Smith v. Blue Cross & Blue Shield United*, 959 F.2d 655, 657 (7th Cir.1992); *Tingey v. Pixley–Richards West, Inc.*, 953 F.2d 1124, 1131 (9th Cir.1992); *International Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294 (6th Cir.1992), *cert. denied*, 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992); *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990); *Bishop v. Provident Life & Casualty Ins. Co.*, 749 F.Supp. 176, 178 (E.D.Tenn.1990); *Kelley v. Sears, Roebuck & Co.*, 882 F.2d 453 (10th Cir.1989); *In re Life Ins. Co. of N. America*, 857 F.2d 1190, 1193 (8th Cir. 1988); *Shiffler v. Equitable Life Assurance Society*, 838 F.2d 78 (3rd Cir.1988); *Ackerman v.*

*Fortis Benefits Ins. Co.*, 254 F.Supp.2d 792 (S.D.Ohio 2003); *Alloco v. Metropolitan Life Ins. Co.*, 256 F.Supp.2d 1023 (D.Az.2003); *Morris v. Highmark Life Ins. Co.*, 255 F.Supp.2d 16 (D.R.I. 2003); *Snook v. Penn State Geisinger Health Plan*, 241 F.Supp.2d 485 (M.D.Penn.2003); *Pachuta v. Unumprovident Corp.*, 242 F.Supp.2d 752, 761 (D.Haw.2002); *Bell v. UNUMProvident Corp.*, 222 F.Supp.2d 692 (E.D.Penn.2002); *Adams v. Unum Life Ins. Co.*, 200 F.Supp.2d 796, 802 (N.D.Ohio 2002); *Erwin v. Texas Health Choice*, 187 F.Supp.2d 661, 666 (N.D.Tex.2002); *Cencula v. John Alden Life Ins. Co.*, 174 F.Supp.2d 794 (N.D.Ill.2001); *Majka v. Prudential Ins. Co. of America*, 171 F.Supp.2d 410, 413 (D.N.J.2001); *Chamblin v. Reliance Standard Life Ins. Co.*, 168 F.Supp.2d 1168 (N.D.Cal.2001); *Jabour v. CIGNA Healthcare of California, Inc.*, 162 F.Supp.2d 1119, 1127 (C.D.Cal.2001); *Andrews–Clarke v. Lucent Technologies, Inc.*, 157 F.Supp.2d 93, 105 (D.Mass.2001); *Brandner v. Unum Life Ins. Co.*, 152 F.Supp.2d 1219, 1226 (D.Nev.2001); *Chiroff v. Life Ins. Co. of N. America*, 142 F.Supp.2d 1360 (S.D.Fla.2000); *Hardy v. Welch*, 135 F.Supp.2d 1171 (M.D.Ala.2000); *Foster v. Blue Cross & Blue Shield of Michigan*, 969 F.Supp. 1020, 1024 (E.D.Mich.1997); *Schwartz v. FHP Int'l Corp.*, 947 F.Supp. 1354 (D.Ariz.1996); *Dials v. SMC Coal & Terminal Co.*, 891 F.Supp. 373, 375 (E.D.Ky.1995), *aff'd*, 89 F.3d 833 (6th Cir.1996); *Ferry v. Mutual Life Ins. Co.*, 868 F.Supp. 764, 770 (W.D.Penn.1994); *Pomeroy v. Johns Hopkins Medical Servs., Inc.*, 868 F.Supp. 110, 115 (D.Md.1994); *Washington Nat'l Ins. Co. v. Hendricks*, 855 F.Supp. 1542 (W.D.Wis.1994); *Hemphill v. Unisys Corp.*, 855 F.Supp. 1225, 1232 (D.Utah 1994); *Suggs v. Pan American Life Ins. Co.*, 847 F.Supp. 1324, 1334 (S.D.Miss.1994); *Ludwig v. NYNEX Serv. Co.*, 838 F.Supp. 769, 791 (S.D.N.Y.1993); *Camire v. Aetna Life Ins. Co., Inc.*, 822 F.Supp. 846, 850 (D.N.Hamp.1993); *Fischman v. Blue Cross & Blue Shield of Connecticut*, 755 F.Supp. 528 (D.Conn.1990); *Martin v. Pate*, 749 F.Supp. 242 (S.D.Ala.1990), *aff'd*, 934 F.2d 1265 (11th Cir. 1991); *McManus v. Travelers Health Network of Texas*, 742 F.Supp. 377, 381 (W.D.Tex.1990); *Garred v. General American Life Ins. Co.*, 723

that Oklahoma's cause of action for breach of the implied covenant of good faith and fair dealing does not affect the risk pooling arrangement between insurers and insureds. Therefore, it does not meet the *Miller*-test as a law which regulates insurance under 29 U.S.C. § 1144(b)(2).[37]

## CONCLUSION

¶ 26 Although this Court will not answer a certified question in the guise of appellate review,[38] the test for preemption has altered with the Supreme Court's recent decision in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003) making any previously promulgated Tenth Circuit decisions of little assistance. Therefore, we exercise our authority to answer any question which may be determinative of an issue in a cause pursuant to 20 O.S.2001 § 1602.[39]

¶ 27 The result here may seem harsh. However, it is a consequence of a federal statute which contains one of the broadest preemption clauses ever enacted by Congress.[40] ERISA provisions supersede any and all state laws insofar as they now or hereafter relate to any employee benefit plan.[41] Congress has expressed an exclusive federal interest in regulating employee benefit plans.[42] The breadth of ERISA's preemption clause often results in plan beneficiaries or participants being left without a meaningful remedy.[43] Nevertheless, the Supreme Court made clear in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003), that—to avoid preemption and to fall within

F.Supp. 1325 (W.D.Ark.1989), *appeal denied*, 902 F.2d 1576 (8th Cir.1990); *Buehler, Ltd. v. Home Life Ins. Co.*, 722 F.Supp. 1554 (N.D.Ill.1989); *Denette v. Life of Indiana Ins. Co.*, 693 F.Supp. 959(D.Colo.1988); *Tucker v. Employers Life Ins. Co.*, 689 F.Supp. 1073 (N.D.Ala.1988); *Morales v. Pan American Life Ins. Co.*, 718 F.Supp. 1297, 1300 (E.D.La.1989), *aff'd*, 914 F.2d 83 (5th Cir. 1990); *Connecticut General Ins. Co. v. Insurance Comm'r*, 371 Md. 455, 810 A.2d 425, 427 (2002), *cert. dismissed*, 538 U.S. 1027, 123 S.Ct. 1964, 155 L.Ed.2d 876 (2003); *Midwest Security Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 167 (Ind. 2000); *Weems v. Jefferson–Pilot Life Ins. Co.*, 663 So.2d 905 (Ala.1995); *Duncan v. Provident Mutual Life Ins. Co.*, 310 S.C. 465, 427 S.E.2d 657 (1993); *Cathey v. Metropolitan Life Ins. Co.*, 805 S.W.2d 387 (Tex.1991), *cert. denied*, 501 U.S. 1232, 111 S.Ct. 2855, 115 L.Ed.2d 1023 (1991); *Elgin v. Great–West Life Assurance Co.*, 163 Ariz. 176, 786 P.2d 1027 (1990); *Cramer v. Association Life Ins. Co.*, 569 So.2d 533 (La.1990), *cert. denied*, 499 U.S. 938, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991); *Davis v. Ottumwa Young Men's Christian Ass'n*, 438 N.W.2d 10 (Iowa 1989); *Lake County Employers' Health & Welfare Benefit Plan & Trust*, 90 Ohio App.3d 809, 630 N.E.2d 781, 785 (1993); *Commercial Life Ins. Co. v. Superior Court*, 47 Cal.3d 473, 253 Cal.Rptr. 682, 764 P.2d 1059 (1988), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 651 (1989); *Yardley v. United States Healthcare, Inc.*, 698 A.2d 979 (Sup.Ct.Del.1996), *aff'd*, 693 A.2d 1083 (Del.1996); *Matter of Estate of Damon*, 892 P.2d 350 (Ct.App.Colo.1995), *aff'd*, 915 P.2d 1301 (Colo.1996); *Curry v. Cincinnati Equitable Ins. Co.*, 834 S.W.2d 701 (Ct.App.Ky.1992). See also, "New Test Announced for ERISA Preemption Savings Clause," 11 No. 16 Legal Notes Ins. 1 (June 2003); "ERISA Preemption: ERISA Savings Clause Doesn't Rescue Bad Faith Claim, Del. Fed. Ct. Holds," 17 No. 22 Andrews Employment Litig. Rep. 16 (June 2003); Chemers & Franco, "The Preemption of State Claims Under ERISA, 78 Ill.B.J. 550 (Nov.1990); Bishop & Denny, "Hello ERISA, Good-bye Bad Faith: Federal Pre-emption of DTPA, Insurance Code, & Common Law Bad Faith Claims," 41 Baylor L.Rev. 267 (1989); Clerin, Rosen & Stedman, "Pilot Life's Dramatic Impact—The Supreme Court Revolutionizes Insurance Bad Faith Law," L.A. Law, p. 37 (Oct.1989). Nevertheless, we note that generally, where bad faith claims have been deemed to either arise out of general contract or tort law or where they have been found applicable in non-insurance causes, the courts are almost unanimous in determining that bad faith claims do not fall within ERISA's savings clause because such causes of action may lie outside the insurance relationship.

But see, *Lewis v. Aetna U.S. Healthcare, Inc.*, note 14, supra; *Ball v. Life Planning Serv.*, 187 W.Va. 682, 421 S.E.2d 223, 227 (1992); *Graves v. Blue Cross of California*, 688 F.Supp. 1405 (N.D.Cal. 1988).

**37.** Title 29 U.S.C. § 1144(b)(2), see note 1, supra.

**38.** *Cray v. Deloitte Haskins & Sells*, see note 12, supra.

**39.** Title 20 O.S.2001 § 1602, see note 2, supra.

**40.** *Greany v. Western Farm Bureau Life Ins. Co.*, see note 36, supra; *PM Group Life Ins. v. Western Growers Assur. Trust*, 953 F.2d 543, 545 (9th Cir.1992).

**41.** Title 29 U.S.C. § 1144, see note 1, supra.

**42.** *Ludwig v. NYNEX Serv. Co.*, see note 36, supra.

**43.** *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 943 (6th Cir.1995); *Foster v. Blue Cross & Blue Shield of Michigan*, see note 36, supra.

ERISA's savings provision, 29 U.S.C. § 1144(b)(2)[44]—a state law must: 1) substantially affect the risk pooling arrangement between the insurer and the insured; **and** 2) be specifically directed toward the insurance industry. Because Oklahoma's law of bad faith does not substantially affect the risk pooling arrangement between the insurer and the insured, it cannot meet the two-prong test of *Miller*. Therefore, we determine that it does not "regulate insurance" under 29 U.S.C. § 1144(b)(2).[45]

WATT, C.J., LAVENDER, HARGRAVE, SUMMERS, and BOUDREAU, JJ. concur.

OPALA, V.C.J., HODGES, and WINCHESTER, JJ., dissent.

OPALA, V.C.J., dissenting from today's compliance with the request to answer a certified question from a federal court.

**I**

¶ 1 The court **flunks** Federalism 101 by boosting its own expertise in federal law

above that of a United States court exercising original jurisdiction over the very case in which the certified legal issue has arisen. Even though I do not dispute the soundness of the court's legal counsel to the certifying tribunal, I cannot countenance today's incursion into the orbit of **exclusive** federal forensic competence. I hence recede from what appears as nothing more than a tender of solicited advice which the recipient tribunal is utterly free to ignore—an exercise in pure supererogation.[1] Advisory opinions—those which have no binding impact on a live controversy—are strongly disapproved by an uninterrupted line of Oklahoma jurisprudence.[2]

¶ 2 The court addresses itself today to a pure **federal-law question**. Preemption of state law by federal law, the subject dealt with in today's response that appears packaged and disguised as an answer to a state-law query, presents a pure federal-law question.[3]

¶ 3 While a state court may in a case properly before it decide federal-law issues (or even claims) that are needed for disposition of a lawsuit,[4] the same authority does not obtain when a state court answers a question certified by a federal court.[5] In the

---

**44.** Title 29 U.S.C. § 1144(b)(2), see note 1, supra.

**45.** *Id.*

**1.** The term "supererogation" means "the act or process or an instance of performing more than is required by duty or obligation ·... [or] more than is necessary to complete an undertaking." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 2293 (1961). *See Patterson v. Beall*, 2000 OK 92, ¶ 2 n. 3, 19 P.3d 839, 848 (Opala, J., dissenting).

**2.** *Dank v. Benson*, 2000 OK 40, ¶ 7, 5 P.3d 1088, 1091; *Loffland Bros. Co. v. Overstreet*, 1988 OK 60, ¶ 28, 758 P.2d 813, 819; *Underside v. Lathrop*, 1982 OK 57, ¶ 9, 645 P.2d 514, 517; *City of Shawnee v. Taylor*, 1943 OK 11, ¶ 4, 132 P.2d 950, 952.

**3.** The Supremacy Clause of Article VI of the United States Constitution provides Congress with the power to preempt state law. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208–09, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985) (citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824)). Whether state law is preempted by federal law is a question of federal law. *Allis–Chalmers Corp., supra*, 471 U.S. at 208–09, 105 S.Ct. at 1909–10; *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978) (quoting *Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963)). *See also*

*Smith Cogeneration Mgmt., Inc. v. Corporation Comm'n*, 1993 OK 147, ¶ 21, 863 P.2d 1227, 1239.

**4.** As U.S. Supreme Court jurisprudence teaches, "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims [and issues] arising under the laws of the United States." *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 823, 110 S.Ct. 1566, 1568, 108 L.Ed.2d 834 (1990) (quoting from *Tafflin v. Levitt*, 493 U.S. 455, 458–60, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990)); *see also Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority*, 1994 OK 20, ¶ 15, 896 P.2d 503, 509–10.

**5.** We function as *officious volunteers* when answering (under the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001 § 1600 *et seq.*) a federal-law question. Our intrusion into the federal-court process would not offer a binding resolution of an unsettled issue but rather gratuitous advice. On the other hand, when we answer a state-law question, our response becomes **binding on the federal court** for application in the process of deciding the case for which the question was submitted. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Texas Industries, Inc. v. Radcliff Materials*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981); *Salve Regina v. Russell*, 499 U.S. 225, 226–27, 231–34, 111 S.Ct.

latter situation **it is not jurisdiction**[6] but **rather judicial authority** that would be clearly absent and is hence lacking. This is so because the Revised Uniform Certification of Questions of Law [Act][7] authorizes us to answer solely questions of state law.[8] An overbroad (or improvident) certification request cannot enlarge this court's Act-conferred authority and extend its range of permissible answers beyond the tightly circumscribed perimeter of state law.[9]

¶ 4 The Act is a clear expression of federalism's present-day teachings.[10] It respects the state's autonomy to declare its own law—constitutional, statutory and unwritten[11]—for its use in a pending federal-court litigation. But it does not authorize this court to cast itself into a role of intrusive and officious volunteer for an impertinent invasion of pure federal judicial decisionmaking process. I would return the certified inquiry to the originating tribunal with an explanation of our inability to act upon its request for an unauthorized advisory opinion on an unmixed question of federal law.

## II

### RESPONSE TO THE COURT'S CRITIQUE OF THE DISSENT

¶ 5 The court errs as a matter of law when it finds inconsistency between its pronouncement in *Delk v. Markel American Insurance Co.*[12] and this dissent. There, the United

---

1217, 1218–19, 1221–23, 113 L.Ed.2d 190 (1991).

*Officious volunteers* are those who introduce themselves into matters which do not concern them and do something which they are neither legally nor ethically bound to do or which is not in pursuance of affording protection to another's interest. *In re Estate of Macfarline,* 2000 OK 87, ¶ 25, 14 P.3d 551, 561; *Barnett v. Barnett,* 1996 OK 60, ¶ 7, n. 7, 917 P.2d 473 n. 7; *Gray v. Holman,* 1995 OK 118, ¶ 7, n. 6, 909 P.2d 776, 779 n. 6 (1995).

6. "This court needs no explicit grant of jurisdiction to answer certified [state-law] questions from a federal court; such power comes from the United States Constitution's grant of state sovereignty." *Bonner v. Oklahoma Rock Corp.,* 1993 OK 131, ¶ 2 n. 3, 863 P.2d 1176, 1178 n. 3.

7. 20 O.S.2001 § 1601 *et seq.*

8. The pertinent terms of 20 O.S.2001 § 1602 provide:

Power to Answer. The Supreme Court . . . may answer a **question of law** certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court *and* **there is no controlling decision of the Supreme Court . . . constitutional provision, or statute of this state.**
(emphasis added).

One treatise maintains that it is "clear that a federal court cannot compel a state court to answer questions in the absence of a state procedure." 17A C. Wright, A. Miller, E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4248, at 160 (2d ed.1988). *See also Planned Parenthood Ass'n v. Ashcroft,* 462 U.S. 476, 493 n. 21, 103 S.Ct. 2517, 2526, 76 L.Ed.2d 733 (1983).

9. *See, e.g., Lumbermens Mut. Cas. Co. v. Belleville Industries, Inc.,* 407 Mass. 675, 555 N.E.2d 568, 574 (1990) (the court states that while it is

authorized to consider certified questions from other courts that relate solely to questions of Massachusetts law, it will not offer its "gratuitous services to opine on questions of Federal law."); *Mardirossian v. Paul Revere Life Ins. Co.,* 376 Md. 640, 831 A.2d 60, 64 (2003) (a question reformulated under the Maryland Uniform Certification of Questions of Law Act "must still be one of Maryland law and must properly dispose of the certified question, and the Act does not authorize the Court to resolve . . . questions of federal law", citing *Piselli v. 75th Street Medical,* 371 Md. 188, 808 A.2d 508, 515 (2002)); *Ramos v. Town of Vernon,* 254 Conn. 799, 761 A.2d 705, 718 (2000) (the Connecticut Uniform Certification of Questions of Law Act "is not designed . . . to provide [the Supreme Court] with the ability to review federal questions that are being litigated in the appropriate federal · fora"); *A.K.H. v. R.C.T.,* 312 Or. 497, 822 P.2d 135, 137 (1991) (the court's authority to consider certified questions is statutorily confined to those of state (not federal) law); *In re Certified Question,* 420 Mich. 51, 359 N.W.2d 513, 516 (1984) (the court declined to answer because "the certified question procedure [had] not been employed to obtain an expression . . . of Michigan law . . . [but] to obtain a ruling . . . on a question of First Amendment federal constitutional law").

10. Bradford R. Clark, *Ascertaining the Laws of the Several States: Positivism and Judicial Federalism After Erie,* 145 U. Pa. L.Rev. 1459, 1550 (1997) ("Certification is perhaps uniquely suited to further the principles of judicial federalism underlying the Supreme Court's decision in Erie.").

11. For the meaning of "unwritten law" see *McCormack v. Oklahoma Pub. Co.,* 1980 OK 98, ¶ 7, 613 P.2d 737, 740.

12. 2003 OK 88, 81 P.3d 629, 2003 WL 22390053.

States court received several state-law answers to meet multiple alternative scenarios that might unfold upon its inquiry into the relationship among cotenants. **All of the court's answers in *Delk* represent applicable and efficacious state law tendered for the certifying court's use in a pending federal-court case.**

¶ 6 The court's critique of the dissent ignores and hence fails to address directly the critical point in dispute. **This point is that judicial testing of state law by federal preemption standards presents for resolution a question of federal law.**[13]

WINCHESTER, J., with whom OPALA, V.C.J. and HODGES, J. join, dissenting.

I dissent from the Court's opinion. I would decline to answer the question. Title 20 O.S.2001, § 1602 allows this Court to answer certified questions that are "determinative" of an issue in pending litigation.[1] The certified question before us involves the interpretation of a federal statute, 29 U.S.C. § 1144(b)(2)(A), and, is not a state' question. *Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003); *UNUM Life Ins. Co. of America v. Ward,* 526 U.S. 358, 363, 119 S.Ct. 1380, 1384, 143 L.Ed.2d 462 (1999), *Palmore v. First Unum,* 841 So.2d 233, 235 (Ala.2002). Our decision is not binding on a federal court. *Tafflin v. Levitt,* 493 U.S. 455, 465, 110 S.Ct. 792, 798, 107 L.Ed.2d 887 (1990).

---

**13.** *Allis–Chalmers Corp., supra* note 3, 471 U.S. at 208–09, 105 S.Ct. at 1909–10. When sitting in the exercise of original jurisdiction United States courts possess **exclusive** competence over federal-law questions. *See in this connection Clark v. Mazda Motor Corp.,* 2003 OK 19, ¶ 3, 68 P.3d 207, 210 (Opala, V.C.J., concurring); *City of Tahlequah v. Lake Region Elec. Co-op., Inc.,* 2002 OK 2, ¶ 5, 47 P.3d 467, 470.

**1.** 20 O.S.2001, § 1602 provides: "Power to Answer. The Supreme Court and the Court of

Criminal Appeals may answer a question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state."